McCORMICK HARVESTING MACHINE COMPANY, Appellant, v. CHARLES HEATH, Respondent.

St. Louis Court of Appeals, March 10, 1896.

1. **Sales**: BREACH OF WARRANTY: MEASURE OF DAMAGES. The measure of damages on the breach of a warranty made in the sale of an article is the difference between the market value, at the time and place of the sale, of the article as warranted and as it actually was.

2. **Witnesses**: DEATH OF AGENT OF CORPORATION. A party sued upon a contract, entered into between himself and a corporation, is not a competent witness to establish the declarations of the agent through whom the corporation acted in making the contract, if at the time of his testimony such agent is dead.

*Appeal from the Newton Circuit Court.*—HON. J. C. LAMSON, Judge.

REVERSED AND REMANDED.

*James H. Pratt* and *Thurman & Wray* for appellant.

*Hugh Dabbs* for respondent.

BIGGS, J.—In this case we have to deal with a very imperfect record. It is stated in appellant's brief that the action is on a note for $44; that it originated before

a justice of the peace; that the note was given for a part of the purchase money of a machine, commonly called a self binder; that the machine was sold under a special warranty which the defendant averred had been broken, and that he interposed the damage arising from the breach in extinguishment of the note. The transcript contains only the evidence, the instructions, the findings of fact by the court, the judgment and the order granting the appeal. All other proceedings in the circuit court, as well as those before the justice, and the original papers are omitted. As no objection is made by the respondent to these omissions, we will review the case as best we can, but we can not refrain from protesting (as we have often had occasion to do) against such carelessness in making up transcripts.

The machine was sold for $132, for which the defendant agreed to execute three notes of $44 each, and the sale was made with the following warranty as shown by appellant's brief, to wit: "That said machine was well made, of good material, and durable with proper care, and, if upon one day's trial the machine should not work well, the purchaser shall give immediate notice to said McCormick Harvester Company or their agent, and allow time to send a person to put it in order, and, if it could not then be made to work well, the purchaser should return it at once to the agent of whom he received it, and his payments, if any had been made, should be refunded. Continuous use of the machine, or use at intervals through the harvesting season, should be deemed an acceptance of the machine by the purchaser." The sale was made in June, 1892.

The plaintiff's evidence tended to prove these facts: Smith and Seabourne, who were subagents under J. H. Price, who was the plaintiff's agent for

the sale of machines and from whom the defendant received the machine, sent a man to the defendant's farm to put the machine together and to start it. He did so, and, it having failed to work, immediate notice was given to Smith and Seabourne, and the latter came immediately and undertook, but without success, to remedy the difficulty; and thereupon Seabourne telegraphed to Price, who sent a machinist by the name of Corby, who likewise failed to make the machine do good work. The defendant offered to return the machine, but was induced to keep and use it through the harvest by the plaintiff's agents upon the assurance that they would remedy the defects. Afterward, on September 8, 1892, defendant signed the notes for the machine at the solicitation of Smith and Seabourne and on the faith of the following guaranty which he supposed was that of the plaintiff, to wit:

"Referring to the McCormick binder, sold by Smith and Seabourne to Charles Heath, we will guarantee to put the same in first-class order and working condition before harvest, 1893. ·

(Signed) _ "J. H. PRICE, JR.
"SMITH AND SEABOURNE."

At the same time Smith and Seabourne wrote to the defendant the following letter, to wit: "You will please find inclosed a written guaranty from Mr. J. H. Price in regard to the binder. We think that this, with our word, should make the binder O. K. You will please sign the notes and send them out by the mail carrier, as we have to make settlement with the company for the machine. If this is not satisfactory, you will please come over right away and we will see what can be done in the matter." In the summer of 1893, Corby again attempted to put the machine in order, and likewise in 1894 one Moore, who professed to be an agent of plaintiff, also worked on it but failed

to make it do good work. On the question of damages the defendant's evidence tended to prove that the difference between the actual value of the machine and its value as warranted was from $45 to $65.

On the other hand the plaintiff's evidence tended to prove that, after Corby fixed the machine the first time, it was in good working order and would have performed good work with proper use, and that the repairs made in 1893 and 1894 were made on the order of Price individually, and were made necessary by the use of the machine and its exposure to the weather; that the last guaranty was that of Price, Smith and Seabourne, as individuals; that the plaintiff was not advised of it and in no way consented to it, and that neither Price, nor Smith and Seabourne, had authority to bind the plaintiff in a contract different from the original warranty under which the machine was sold. The court sitting as a jury found the issues for the defendant, and a judgment for costs was entered in his favor. The plaintiff has appealed.

On the part of the defendant the circuit court gave the following instruction, of which the plaintiff complains, to wit:

"The court declares the law to be such that, if it be found from the evidence that the machine was not well made, of good material, or with proper care would not work well for its intended uses upon one day's trial and after notice to plaintiff's agents and time to put it in order, and that defendant then offered to return and deliver the machine to plaintiff's agents from whom he had bought it, as agreed, and that thereupon they induced him to retain and use the machine under the further promise and agreement to make it good for the intended uses as warranted, then the conditions of the original warranty must be taken as performed by defendant, or waived by plaintiff as to return and use

of machine; and that the machine was not such as it was sold and purchased for, nor made good therefor by plaintiff, nor of as much value for such uses, then the defendant would be entitled to have the difference between the real, reasonable value of the machine and the contract price deducted from the purchase note sued in this case."

The following instructions were asked by the plaintiff and refused by the court, to which the plaintiff excepted and still excepts, to wit:

"The court declares the law to be that, notwithstanding the witnesses, J. H. Price or Smith and Seabourne, or anyone else, may have been the agents of the plaintiff for the purpose of selling and guaranteeing the machines in a particular manner, yet, unless the defendant shows by a preponderance of the testimony that said agents acted with authority in making any promises to defendant concerning any other guaranty than the one admitted to have been made at the time of the purchase of the same, then defendant can not recover and the verdict should be for the full amount of the note sued on, with interest at the rate mentioned in said note."

"The court declares the law to be that the purchaser in this case is confined to the terms of the guaranty, unless he has by a preponderance of the testimony shown a waiver by plaintiff; and, unless he gives notice to the vendor and returns the machine and offers it back according to the terms of the contract, he can not recover. And if the evidence shows that he kept said machine for a considerable length of time and harvested several crops, then the presumption is that he accepted it and intended to keep; and this fact, if proven, amounts to a waiver on his part of any defect that may have belonged to said machine at the time of

the purchase of the same, notwithstanding he may have been induced to keep the machine by the promises of someone else, unless it has been shown that said person or persons had authority from the plaintiff to make such promises and waive the former contract, and also to bind the plaintiff.''

''The court declares the law to be that, if the evidence in this case fails to show that the witnesses, J. H. Price, I. E. Moore or Robert Corby, were the authorized agents, or either of them authorized to make a new contract with defendant or to waive the old one made at the time of the purchase of the machine in question, then anything either of said witnesses said or did would be on his own responsibility, and the McCormick Harvesting Machine Company would not be bound by the act or deed of either of said persons; and that the burden of proof is on the defendant in this case to show by a preponderance or greater weight of the testimony that the said witnesses, or some of them, were authorized to waive the said contract made with defendant at the time of purchasing the said machine, or else the defendant can not recover upon any promise made to him by either of them.''

We think it clear that the defendant's claim for damages, if he has any, must rest on the breach of the second warranty. There was absolutely no compliance with the first, which presumably was the only one which the agent had a right to make ( *Wood, etc., Company v. Crow*, 70 Iowa, 340; *Aultman & Company v. York*, 20 S. W. Rep. 851), and there is no evidence of authority on the part of Price or anyone else to waive its conditions. To authorize the defense under the second warranty, it was incumbent on the defendant to show by a preponderance of the evidence that either Price or Smith and Seabourne had authority to make it, and did make it, on behalf of the plaintiff, or that

the plaintiff subsequently ratified it. The plaintiff's instructions should have been given, had they presented the question of ratification, of which there was some evidence. The instruction given for the defendant is erroneous, in that it does not require that the agents, in making the second warranty, acted for the plaintiff and by its authority, or that the plaintiff with full knowledge of the facts subsequently ratified it. Besides, it misstates the measure of damages, which is the difference between the marketable value of the machine at the time and place of sale as warranted and its value as it was. *Layson v. Wilson*, 37 Mo. App. 636; *Stearns v. McCullough*, 18 Mo. 411; *Kerr v. Emerson*, 64 Mo. App. 159. For this reason the judgment will have to be reversed.

What we have said condemns the defendant's first instruction, which need not be set out, and also the plaintiff's sixth instruction, which was in the nature of a demurrer to the evidence. There was some evidence of ratification, which in our opinion was sufficient to carry that question to the jury. Corby and Moore went to the defendant's farm in 1893 and 1894 for the purpose of repairing the machine. They testify that at that time they were in the service of the plaintiff, and that they did the work under the direction of Price who continued to represent the plaintiff in that portion of the state. Price testified that he sent them on his own account, and for the purpose of making good his individual contract with the defendant, and that the plaintiff knew nothing about it. Whether in doing the work they acted for the plaintiff, and with the knowledge and consent of its officers, was for the jury, especially as the plaintiff's collecting agent gave testimony, at least inferentially, that, when the plaintiff placed the notes in his hands for collection, he was instructed to repair or overhaul the machine—that there

had been some complaint to the company that the machine had not given satisfaction.

The plaintiff complains in its brief of the insufficiency and nature of the defendant's answer. The plaintiff's statement does not set out the answer, but merely undertakes to state its substance, which precludes an intelligent discussion by us. It would seem, however, from the findings of the court and the judgment that the defendant was content to recoup or counterclaim his alleged damages to the extent only of the note in suit.

Objection was also made at the trial to the testimony of defendant as to conversations with Seabourne, who was shown to be dead. The objection ought to have been sustained. The question is so decided in *Williams v. Edwards*, 94 Mo. 447.

With the concurrence of the other judges the judgment of the circuit court will be reversed and the cause remanded. All the judges concur.