JOHN B. BUSS, Appellant, v. ALLISON WINDOW GLASS COMPANY, Respondent.

St. Louis Court of Appeals, December 14, 1909.

1. APPELLATE PRACTICE: Trial Practice: Questions of Fact: Province of Trial Court. Questions of fact are peculiarly within the province of the trial court, and where there is substantial evidence to support the conclusion reached by the trial judge, under the instructions given, it will not be disturbed on appeal.

2. SALES: Evidence: Negative Assertions. In an action for the recovery of the agreed price for installing machinery for defendant, where the defense was that the machinery did not perform its work according to a warranty, evidence that "a pulley or two, which defendant thought belonged to it, may have been taken from the shafting hangers of said machinery and used, does not tend to prove defendant used portions of said machinery.

3. **DAMAGES: Instructions: Refusal of Instruction on Measure of Damages.** The court is justified in refusing an instruction on the measure of damages, when the finding on the issues joined is for defendant.

4. **SALES: Warranty: Rejection of Article: Buyer's Duty.** Where machinery is rejected because it fails to perform the work it was warranted to perform, it is not the buyer's duty to return it to the seller, and the mere fact it remains on the buyer's premises, after its rejection, does not operate as a retention by the buyer.

5. ———: **Action for Price: Failure of Consideration May be Shown as Defense.** In an action to recover the price of an article sold, defendant may show total failure of the consideration.

6. ———: ———: ———: **Failure to Return Worthless Article or Give Notice.** Where an article sold is wholly worthless, the defense of total failure of consideration may be shown, though there has been no return or offer to return the article, and no notice given to the effect it is without value.

7. ———: ———: ———: **Article not Wholly Worthless.** Where a buyer retains the article sold and does not offer to return it, and it is not wholly worthless, the plea of failure of consideration is available to defeat a recovery of the price only to the extent of the difference between the contract price and the real value of the article.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED.

*Kinealy & Kinealy* for appellant.

(1) The defendant not having rejected the machine within a reasonable time after receipt is liable for the contract price less any partial failure of consideration if any shown. Keystone Imp. Co. v. Leonard, 40 Mo. App. 477; Voss v. Maguire, 18 Mo. App. 477. (2) The burden was on the defendant to show a breach of warranty and therefore plaintiff's instruction was erroneously refused. Branson v. Turner, 77 Mo. 489; Roth v. Wire Co., 94 Mo. App. 236.

*Nagel & Kirby* for respondent.

(1)   As the court gave the two first declarations of law asked by plaintiff and found against plaintiff on the issues of fact, nothing remains for review except the refusal of the court of the third declaration.   As this related only to the measure of damages and burden of proof in case the court found for plaintiff on the other declarations, it presented merely an abstract proposition of law, and its refusal constituted no error. Schaefer v. Railroad, 128 Mo. 64; Kibler v. Barker, 45 Mo. App. 109.   (2)   The contract in suit is not a contract for the sale of an article of a certain description with a warranty as to its future performance, but an undertaking to install and make alterations in a piece of machinery so as to produce certain results. The production of these results was not merely a "collateral representation," but the "express object of the contract." 30 Am. and Eng. Ency. Law (2 Ed.), p. 129.   (3) Where it is manifest from the record that the judgment is for the right party, it will not be reversed for error in declaration of law.   Moore v. Mountcastle, 72 Mo. 605; Kibler v. Barker, 45 Mo. App. 109.

NORTONI, J.—This is a suit for the value of certain machinery installed by plaintiff in defendant's glass factory.   The finding and judgment were for the defendant and the plaintiff appeals.

The plaintiff is a manufacturer of machinery and the defendant owns and operates a glass factory at Centralia in the State of Illinois.   It appears the defendant was desirous of installing a cast-iron hopper with certain appliances and connections in its factory for the purpose of imparting a dull finish to the glass in the process of manufacture.   A similar machine or appliance was in operation in the Kerwin Ornamental Glass Company's factory in St. Louis and rendered satisfactory service.   Both plaintiff and defendant knew of

the machine in the Kerwin Ornamental Glass Company plant and that it produced satisfactory results. In view of these facts, plaintiff wrote the defendant the following letter:.

"Messrs. J. W. Allison Window Glass Co., City:

Dear Sirs: For the sum of ($437.00) four hundred thirty-seven dollars we propose to furnish you with one combination cast-iron air and sand hopper and connect same with your blast pipe and sand hopper connections and make alterations on machine so as to enable it to operate equivalent to the machine now in use at the K. O. G. Co.'s plant here.

We agree to use only first-class material and workmanship in executing this order and to make the machine produce results same as K. O. G. Co. are getting from their machine.

Respectfully submitted,<br>J. B. BUSS.

N. B.—It is understood that you are to pay the transportation and board of our erecting man while at your works.

J. B. BUSS."

Defendant glass company accepted the plaintiff's proposition and the contract was consummated, as appears from the following letter, addressed by it to him:

"St. Louis, Mo., April 18, 1905.

Gentlemen:—We accept your proposition under date of April 17th to complete and put up in perfect operation sand blast plant for the sum of $437.00, with the guarantee that it does as good work as the Kerwin Ornamental Glass Co.'s plant. We also agree to pay, in addition to this, the transportation and board of your erecting man at our works.

What we want most now is prompt attention, so let us have this machine at the earliest moment possible.

Very truly,

ALLISON WINDOW GLASS CO.,

J. A. W. ALLISON,

Treasurer and Business Mgr."

The testimony tends to prove that plaintiff constructed and installed the machinery referred to in defendant's factory but that it would not produce the results anticipated. There is no controversy whatever as to the fact that the machine installed by plaintiff failed to produce results the same as the Kerwin Ornamental Glass Company were getting from their machine. In truth, it appears that the machine installed by plaintiff was a total failure in this respect. The plaintiff himself testified over and over again that upon the several trials or tests made by him the machine failed to perform equal to the machinery being operated by the Kerwin Ornamental Glass Company. However, while the testimony on the part of the plaintiff conceded that the machine installed by him wholly failed to produce the anticipated results, it also tended to prove such failure was not the fault of the machine in and of itself but instead was the fault of the defendant company in failing to supply a sufficient pressure blower and power to operate the same. It seems the purpose of the machine was to distribute sand by means of a pressure blower on sheets of glass which were passed immediately thereunder; the sand to be distributed uniformly by a blowing process to the end of deadening or dulling the surface of the glass. The blowing apparatus was a portion of the defendant's machinery to which the machine constructed by the plaintiff was to be connected. As stated, the theory of the case advanced by the plaintiff is to the effect that the machine constructed and installed by him was sufficient in all respects and that it failed in its operation and in producing the desired results because of

the fact that defendant failed to furnish a proper blower with which to connect it. It appears that upon installing the machine it was connected to a five-horse power Sturtevant pressure blower then in operation in the factory; that upon tests being made, the machine failed to operate. The defendant then negotiated for another blower and instructed the plaintiff to call and examine the one he selected. It appears plaintiff examined the appliance referred to and pronounced it sufficient in mechanical construction. Thereupon the defendant purchased and installed this new or second blower and plaintiff connected his machine therewith. Other tests were thereupon made and the machine failed as before to produce the desired results. It is to be inferred from the testimony that plaintiff thereupon abandoned any further effort to make the machine render the service for which it was installed. At any rate, it is clear that it did not render the service and that it was never used by defendant. The testimony on the part of the defendant goes to the effect that the machine was installed as above indicated and that after several attempts were made to operate it, its use was abandoned. The theory advanced by the defendant is that the machine failed to operate because of fault in its construction and not because of the insufficient blower or power. The manager of defendant's department under whose charge and supervision the machine was to operate testified as follows:

"Q. Will you state whether, in your opinion, that machine is able to grind glass if it had the most approved form of blower and ample power? A. I don't think it could. In fact, I know it can't grind glass equally. Q. Equally with what? A. Am I allowed to state— Q. Just explain what you mean? A. The sand-blast machine required a steady, equal flow of sand brought down to the glass, with a pound pressure, and the reason I say that the machine would not grind equally is because the sand distributor used in the ma-

chine which was out there at that time had a roller which was grooved, consequently turning and taking a groove of sand and putting it down into the space where the pressure caught the sand; and now, every time the roller turned and brought the sand down it made ridges upon the glass; consequently there was a more ground spot—more of an opaque surface.

"Q. Then, if I understand you, this machine which Mr. Buss erected didn't supply the sand uniformly to the blast? A. That is proper.

"Q. Did you see any trials made of that machine? A. Yes; I was at the machine, helping them put the glass in, while they made the trials.

"Q. What was the result of those trials? A. Streaky glass. We have a sample—I brought a sample for you to see."

Other testimony as well on the part of the defendant is to the effect that the blower and power furnished by defendant were sufficient and that the machine failed in operation because the roller operated in the sand distributor was not constructed as it should have been. It appears to be admitted, too, throughout the testimony of the plaintiff himself that although he had examined and sketched the machine in the Kerwin Ornamental Glass Company's factory, of which the present machine was to be a counterpart, that he had constructed the machine for defendant with some modifications and improvements or with slight differences which are not explained in the testimony. Throughout the entire case, it is apparent that the machine not only failed to produce the desired results but that it was never used for that reason. The defendant declined to pay the purchase price and notified plaintiff the machine was there in its factory subject to his order. The case was tried before the court without a jury. At the instance of the plaintiff, the court declared the law as follows:

(1) "The court declares the law to be that the machine here in question was sold by the plaintiff to

the defendant with the warranty that it would operate equivalent to the machine in use at the Kerwin Ornamental Glass Company's plant, and if the court believes from the evidence that the machine in question was built by plaintiff and delivered to defendant and received by it, and that parts of said machine have ever since been in use by the defendant, then the plaintiff is entitled to recover in this action and the finding of the court must be in his favor.

(2) "The court declares the law to be that if he believes from the evidence that the plaintiff furnished to the defendant one combination cast-iron air and sand hopper, and connected same to the defendant's blast pipe and said hopper connections, and that said machine when so furnished and connected by plaintiff was capable of doing the same character and amount of work as that done by the machine in the Kerwin Ornamental Glass Company's plant, if the machine so furnished by plaintiff were operated under the same conditions as those in the said Kerwin Company's plant, then the finding will be for the plaintiff in the sum of $437, together with interest thereon at the rate of six per cent per annum from January 19, 1906 (the date of the institution of this suit), to this date."

Under the instructions thus given, the court found the issue for the defendant. From a reading of the first instruction given, it is obvious the court found the fact to be that no parts of the machine had been used by the defendant, for that instruction declared in effect that even though the sale were accompanied by a warranty and the machine failed to operate as a whole, if defendant received the machine and had ever since used parts of it, plaintiff was entitled to recover.

From the second instruction given, it is obvious the court found the fact to be that the machine was insufficient to perform the results required by the warranty, even if it were operated under the same conditions—that is, with the same power and blower attachment as those

used in the Kerwin Ornamental Glass Company's plant. The questions of fact involved are peculiarly within the province of the trial court. With that matter we are not concerned. And it ought to be sufficient for the disposition of this appeal to say that there is substantial evidence in the record to support the conclusion so obviously reached by the trial judge under the instructions given. There can be no doubt that there is evidence tending to prove no parts of the machine were ever used by the defendant. In truth, no one intimates that the machine was ever used by defendant and all of the evidence on either side is conclusive to the effect that it would not perform the service desired. Pointedly, on this question the court inquired on the trial:

"Q. Has the machine been used since that time? A. No, sir. Q. Where is it now? A. Still over there in the condition in which it was left. Nobody touched it after that. (That is, after the tests which disclosed it to be a failure were made.) The questions and the answers are repeated.

"By the court: Q. Has the machine been used since that time? A. No, sir. Q. Where is it now? A. Still over there in the condition in which it was left. Nobody touched it after that.

"By Mr. Shepley: Has any part of it been utilized? A. Not of the machine proper, no.

"By Mr Kinealy: What do you mean by the machine proper? A. Why, the cast-iron work, and pulleys, etc. The shafting hangers are still hanging up there in place. Q. Are they being used? A. There may be a pulley or two taken off that we thought belonged to us. Q. Do you know what that may be? A. There may be some pulleys used. I can't tell what there is taken away from it."

In the face of the clear testimony throughout the record that the machine and no part of it was ever used by defendants, the mere fact that the witness said "there may be a pulley or two taken off that we thought be-

longed to us" cannot be tortured into evidence that defendant used portions of the machine. This witness, defendant's superintendent, did not so testify. At most, the questions and answers touching this matter amount to no more than a refusal on the part of the witness to positively say that there may not have been a pulley or two taken off of the shafting or hangers under the impression that they belonged to the defendant company. The witness certainly did not state such to be the fact and this is the only scrap of testimony in the record touching the matter. In fact, no one suggested throughout the trial that the defendant company had ever used this machine or any appliance connected therewith. The above answers, touching this matter were eked out only, as is apparent, through the desire of the witness to be frank about a matter of detail with respect to which he was confessedly not fully advised.

There is abundance of proof in the record, too, to sustain the finding of the court to the effect that the machine would not produce the desired results even though it were operated under the same conditions as to power and blower apparatus which obtained in the Kerwin Ornamental Glass Company's plant. Although the plaintiff's testimony tended to prove that the failure to obtain the desired results was attributable to an insufficient blower and power under the control of the defendant, that on the part of the defendant not only suggests sufficient power and blower apparatus, but tended to prove as well that the machine failed in operation because of defective construction in the roller operating a distribution of the sand. As stated before, this ought to dispose of the case for the reason the court found the facts essential to affix liability against defendant in its favor.

However, the plaintiff requested, and the court refused, his third declaration of law as follows:

(3) "The court instructs the jury that if under the evidence and other instructions, the court finds in favor of the plaintiff the finding will be for the sum of

$437, the contract price of the machine in question less the amount, if any, as the value of the machine has been depreciated by the breach, if any, of the warranty under which it was sold, and the burden is upon the defendant to show by a preponderance of the evidence that there has been such a breach of warranty and depreciation in the value of the machine."

It is argued that error was committed in refusing this instruction. It should be sufficient to say that the court was justified in refusing the instruction as it related more particularly to the measure of damages in the event plaintiff recovered, and no material harm could result to plaintiff when the finding on the issue joined was for the defendant. However, as an abstract proposition that asserted in the concluding lines of the instruction to the effect that the burden of proof was on defendant to show that there had been a breach of the warranty was correct enough. The argument advanced touching the refusal of this instruction is to the effect that the court declined to treat with the proposition of law applicable when it appears the vendee has retained the article sold and has used it or parts of it. It is argued in such circumstances that even though the warranty is breached, the vendor may recover the contract price less the amount sufficient to render the machine perfect for the purposes intended. This argument predicates in part upon testimony given by the plaintiff in rebuttal to the effect that if the roller appliance in connection with the sand distributor was defective, as defendant's witness portrayed, the defect could have been rectified by an expenditure of three dollars. The argument predicates, too, upon the false assumption that the evidence shows the defendant retained the machine and used parts of it. In this connection plaintiff opens the argument in the brief in the following language:

"In this case, it is to be remembered that the defendant has retained this machine and is now using parts of

146 App.—6

it. That being so, plaintiff was entitled to recover something and as there was no contradiction of the fact that this machine was still retained by the defendant the right of plaintiff to recover follows as a legal conclusion from the uncontroverted facts."

The entire record controverts the predicate for this argument. While it does appear that the machine still remained at defendant's factory, it is clear that defendant did not retain it. It was not defendant's duty to return the machine to plaintiff. The plaintiff himself installed it. It was sufficient for the defendant to reject it as it did. The mere fact that the machine remained in defendant's building after it was rejected did not operate as a retention thereof by defendant. Throughout the entire case it is conceded the machine had been rejected by the defendant. No one controverted this fact and the only testimony in the record touching the matter is that given by the plaintiff himself to the effect that the machine had been rejected and was in defendant's mill subject to his order.

"Q. Isn't it a fact that he (defendant's president) told you that it (the machine) was subject to your order over there any time you wanted it? A. Yes, sir, he made a remark to that effect. Yes, sir."

It is obvious the defendant did not retain the machine although it remained there because the plaintiff had failed to call and take it away. It is obvious, too, that nothing in this record tends to prove that defendant used any part of the machine. The mere fact that one of its witnesses declined to deny, as heretofore pointed out, that one or two pulleys may have been used by the defendant under the impression that they belonged to defendant is insufficient to constitute substantial evidence tending to prove defendant retained and used parts of the machine. No one said that defendant did use the pulleys. That in an action for the price, the defendant may show total failure of the consideration is beyond question. And when it appears the article was

wholly worthless, the defense is equally valid even though there has been no return or offer to return the article and no notice given to the effect that it is without value. [Compton v. Parsons, 76 Mo. 455; Murphy v. Gay, 37 Mo. 535; Keystone Implement Co. v. Leonard, 40 Mo. App. 477; Kerr v. Haymaker, 20 Mo. App. 350; Barr v. Baker, 9 Mo. 840.]

However, if the purchaser retain the article and does not offer to return it and it is not wholly worthless, the plea of failure of consideration is available to defeat a recovery of the price only to the extent of the difference between the contract price and the real value of the article. [Brown v. Weldon, 99 Mo. 564; Keystone Implement Co. v. Leonard, 40 Mo. App. 477.]

It is the principle last referred to which plaintiff sought to invoke in the third instruction which was refused by the court. Had the evidence shown that defendant retained the machine and used portions of it, it may be that the instruction should have been given. It is unnecessary to examine it with scrutiny to ascertain the matter with precision. It is enough to say that although there was evidence tending to prove that the defect was such as might have been rectified by the expenditure of three dollars, there was no evidence whatever to the effect that defendant had retained and used either the machine or portions thereof. And it is certainly the law that if the machine was worthless, as appears, and defendant neither retained it nor used any portion thereof, it was under no obligation to either return the same or notify the plaintiff of the defect. Be this as it may, defendant did notify plaintiff of the fact that the machine was worthless and told him it was there subject to his order.

The judgment should be affirmed. It is so ordered. All concur.