ACME HARVESTING MACHINE CO., Appellant v.
   J. M. GASPERSON and P. E. GASPERSON, Re-
   spondents.

Springfield Court of Appeals, February 3, 1913.

1. PROMISSORY NOTE: Defenses. In a suit on a promissory
note for the purchase price of a binder it was permissible for
the defendant to plead both a failure of consideration and also
a breach of the warranty as a counterclaim, where the same
were not inconsistent.

2. ———: Failure of Consideration. The plea of failure of con-
sideration goes only to the extent of the purchase price and the
proof is confined to showing that the machine did not measure
up to the terms of the warranty, express or implied.

3. ———: Breach of Warranty as Counterclaim. As a counter-
claim the recovery may be had for a greater or less amount
than plaintiff's claim and the pleading and proof would extend
to special extraneous damages.

4. WARRANTY: Express and Implied. Either an express or im-
plied warranty may be the basis of a failure of consideration.

5. ———: Implied Warranty. An implied warranty always ap-
pertains, in the absence of an express warranty to the same
effect or inconsistent therewith, that an article sold for a
special purpose is suitable for that purpose.

6. ———: Express Warranty: Conditions Precedent. An express
warranty, which imposes conditions precedent, supersedes a
like or inconsistent implied warranty and to render it avail-
able as a defense, performance of conditions precedent thereto
annexed must be alleged and proven.

7. IMPLIED WARRANTY: Breach: Not Necessary to Return
Article nor Notify of Defects. Under an implied contract of
warranty the purchaser is not bound to return the property
should it fail to measure up to the warranty, nor must he give
notice of the defect. He may continue to use it in the defective
condition without losing his defense. In such a case the defense
goes only to a part failure of consideration if the machine is
of any value for any purpose or if it may be repaired.

8. WARRANTY: Equivalent Expressions in. A special war-
ranty on a machine "of doing good and efficient work for which
it is intended" is equivalent to the implied warranty to the
same effect.

Machine Co. v. Gasperson.

9. **INSTRUCTIONS.** In an instruction purporting to cover the entire case it is not necessary to submit every disputed evidentiary fact arising in the case, even though the same be pleaded. It is only necessary to submit the essential facts warranting a recovery and not omit the essential facts which would defeat such recovery, and vice versa.

10. **VERDICT: Finding of Jury: When Conclusive.** The finding of a jury on any fact, where there is substantial evidence to support it, makes that fact conclusive on the appellate court.

Appeal from Jasper Circuit Court, Division Number Two.—*Hon. David E. Blair,* Judge.

AFFIRMED.

*R. A. Mooneyham* and *Hugh Dabbs* for appellant.

1. By terms of the written contract and warranty between plaintiff and defendants, it is shown that defendants purchased the machine in controversy with a special warranty, containing conditions precedent before any liability should attach to plaintiff on account thereof. Defendants failed to comply with the conditions of the contract and warranty, and kept and used the machine after the time therein provided. This failure, by the terms of the contract, served as an agreement on defendants' part that the machine fulfilled the warranty. Bank v. Barts, 130 Mo. App. 635; Smoke Co. v. St. Louis, 205 Mo. 239; Nichols-Shepard Co. v. Rhoadman, 112 Mo. App. 299; Kingman Co. v. Schulenberger, 64 Mo. App. 556; Esterly v. Campbell, 44 Mo. App. 622; Boyer v. Neel, 50 Mo. App. 26; Draper v. Farris, 56 Mo. App. 418; Nichols v. Larkin, 79 Mo. 264. 2. There is no evidence that defendants complied with all the terms of the contract and warranty, and defendants do not claim a waiver of these terms by plaintiff. The burden of proof to show full compliance with these conditions, or a waiver thereof by the plaintiff, is on the defendants. Bank v. Barts, 130 Mo. App. 638; Nicols-Shepard Co. v. Rhoadman, 112 Mo.

App. 308; Nicols v. Larkin, 79 Mo. 264. 3. The sale became complete on the failure of defendants to comply with the terms of the contract and warranty, and plaintiff's right of action accrued on the failure of defendants to give notes at the time specified in the contract. This is not altered by the fact that the notes were subsequently executed and delivered to plaintiff, and the measure of damages is the face of the notes. Globe Co. v. Doud, 47 Mo. App. 451; Autman & Co. v. Daggs, 50 Mo. App. 289. 4. The measure of damages under this supplemental agreement (if it has any value) is the reasonable cost of remedying the defects specified, or the difference between the market value of the machine as warranted and its value as it was. Kerr v. Emerson, 64 Mo. App. 160; Machine Co. v. Heath, 65 Mo. App. 461. 5. An instruction purporting to cover the entire case and authorizing a recovery on the facts hypothecated, must not exclude from the consideration of the jury any of the evidence offered by either plaintiff or defendants. Boyer v. Neel, 50 Mo. App. 26; Wood Mach. Co. v. Babbst, 56 Mo. App. 431; Kingsland v. Board Bros., 60 Mo. App. 662; Tube Works v. Ice Mach. Co., 201 Mo. 61. 6. After pleading the supplemental contract, and the introduction of evidence that the machine had only a few defects which could be remedied at small cost, it was out of the question to submit to the jury the proposition that the machine was worthless for any purpose. Nicols-Shepard Co. v. Rhoadman, 112 Mo. App. 309. 7. The acceptance was an absolute bar to the defence set up in defendants' answer, and the trial court erred in refusing to instruct the jury at the request of plaintiff to consider this in arriving at their verdict, and in not including it in its instruction given for defendants, and in failing to direct a verdict for the plaintiff for the full amount sued for. Wood Mach. Co. v. Babbst, 56 Mo. App. 431; Importing Co. v. Carl, 116 Mo. App. 581.

*Henry L. Bright* for respondent.

1. Whenever a promissory note shall be the foundation of an action, the proper party may prove as a defense the want or failure of the consideration, in whole or in part. R. S. 1909, sec. 1974. 2. That the plea of failure of consideration of the purchase price for personal property sold on a warranty is available as a defense, in a suit to recover such price, is the well settled law of this State. Williams v. Baker, 100 Mo. App. 288; Herman v. Merc. Co., 106 Mo. App. 438; Brown v. Weldon, 99 Mo. 564; Maugh v. Hornbeck, 98 Mo. App. 389; Miles v. Withers, 76 Mo. App. 87; Stewart v. Miles, 80 Mo. App. 24; Steel & Wire Co. v. Symons, 110 Mo. App. 47; Implement Co. v. Parmer, 128 Mo. App. 300; Fairbanks v. Baskett, 98 Mo. App. 58; Schoenberg v. Locker, 88 Mo. App. 387; New Birdsell Co. v. Reys, 99 Mo. App. 458; Bailes v. Heer, 91 Mo. App. 428; Crenshaw v. Looker, 185 Mo. 375. 3. The defenses, breach of warranty and failure of consideration, in separate counts, are not inconsistent. Implement Co. v. Leonard, 40 Mo. App. 477; Crenshaw v. Looker, 185 Mo. 375; Brown v. Weldon, 99 Mo. 564; Murphy v. Gay, 37 Mo. 535; Compton v. Parsons, 76 Mo. 535; Bank v. Burts, 130 Mo. App. 635. 4. Where goods are not of the kind or quality contracted for, or are unfit for the purpose for which they were sold, it is not necessary to return or offer to return the goods, in order to defena against an action for the purchase price on the ground of failure of consideration. Murphy v. Gay, 37 Mo. 537; Compton v. Parsons, 76 Mo. 457; Brown v. Weldon, 99 Mo. 568, 494; Sinnamon v. Moore, 142 S. W. (Mo. App.). 5. Plaintiff in the trial court raised no objection to the answer, and any objection thereto, save that it fails to state a cause of action, cannot be raised for the first time in the appellate court. R. S.

1909, sec. 1804; Catron v. Lafayette Co., 106 Mo. 659; R. S. 1909, secs. 1804, 1816; Kinney v. Miller, 25 Mo. 576; St. Louis v. Wetzel, 130 Mo. 600; Harper v. Fidler, 105 Mo. App. 680; R. S. 1909, secs. 1815, 1816; Mc-Glothin v. Hemery, 44 Mo. 350; Haynes v. Trenton, 123 Mo. 326; Sheehan v. Sims, 36 Mo. App. 224; Williams v. Railroad, 112 Mo. 463; Coombs v. Block, 130 Mo. 668; Edwards v. Railroad, 74 Mo. 117; Gilson v. Railway Co., 76 Mo. 282; Lingenfelter v. Insurance Co., 19 Mo. App. 252.

STURGIS, J.—This is a suit on two promissory notes for $70 each, given by the defendants in payment of the purchase price of a binder purchased by them of plaintiff. The plaintiff failed to recover and brings the case here by appeal

The petition is in the usual form and the answer admits the execution of the notes sued on. The answer is in two counts and as a defense the first count alleges that the notes were given in payment of a certain Acme Self-binding Harvester; that the harvester was bought for the purpose of cutting and binding grain; that defendants purchased the harvester upon a written and printed warranty that it would do good and efficient work for which it was intended when properly operated; that defendants properly operated said harvester, but that same would not cut and bind grain and wholly failed to work; that defendants at once notified plaintiff's agents and plaintiff of the defective condition of the harvester; that plaintiff's agents made divers efforts to remedy the defects without avail; that defendants at once offered to return said harvester; that afterward, on September 2, 1910, plaintiff agreed in writing to put said harvester in order for the next season; that defendants relied upon said agreement and were induced thereby to retain said harvester until the next season; and were thereby induced to execute and deliver the notes sued on; that de-

fendants gave due notice to the plaintiff before the cutting season of 1911 and requested it to put said harvester in good order as agreed, but that plaintiff failed and refused to do anything whatever during that season to put it in order; that the harvester at that season again failed to cut and bind grain and defendants were compelled to abandon the same; that defendants at once offered to return said harvester to the plaintiff and that they are still ready and willing to return same, but that plaintiff refused and still refuses to receive it; that at all the times mentioned the harvester was wholly worthless for the purpose for which it was intended and for which it was purchased and was wholly worthless for any purpose whatever and still so remains; that the consideration of said notes has wholly failed and that plaintiff is not entitled to recover the same or any part thereof.

The second count is denominated a counterclaim and sets out in the same manner substantially all the allegations of the first count, inclusive of the allegation that the harvester was intended to be used and was bought for the purpose of cutting and binding grain, and that it was purchased subject to a written and printed warranty that the same would do good and efficient work for which it was intended when properly operated. It again alleges that the harvester wholly failed to comply with plaintiff's warranty to do good and efficient work for which it was intended and for which it was purchased and was wholly worthless for any purpose whatever. The only material difference between the first and the second counts is that the second count sets up in detail that defendants were damaged by the failure of the harvester to work by reason of loss of time, in being compelled to hire another binder, for extra work in helping or in trying to repair the binder, and for loss of grain by reason of its doing defective work, all in the sum of $300, for which they ask judgment.

Plaintiff made no objection to this answer, except to object to the introduction of any evidence on the ground that the same did not allege facts sufficient to constitute a defense, the execution of the notes being admitted. This objection was overruled and at the close of all the evidence the defendants dismissed as to the second count, the court refused a peremptory instruction to find for plaintiff and the case was submitted to the jury on the first count only.

The binder in question was purchased by defendant in May, 1910, to be delivered in June thereafter. The machine was purchased on a written order which contains the following warranty and conditions:

"Any machine of our make is guaranteed 'to do good and efficient work for which it is intended when properly operated.'

"The purchaser shall have one day to give it a fair trial; should the implement then fail to fulfill this warranty, notice is to be given at once to the dealer from whom the machine was purchased, and after the dealer had used his best efforts, and should the machine still fail to fulfill the warranty, then both the purchaser and dealer are to give immediate notice to the Acme Harvesting Machine Company, at Peoria, Illinois, or their authorized general agent, under whose jurisdiction this order was written, stating wherein the machine fails to fulfill the warranty, and a reasonable length of time is to be allowed for instructions to be given, or if necessary, the sending of a person to put it in order, or to remedy the defects, if any; the purchaser rendering any necessary assistance and furnishing suitable teams, etc., when if it cannot be made to fulfill the warranty, he shall return it to the place where received free of charge, and in as good condition as when received, and a new machine will be given in its place or the notes and money will be refunded. Under no circumstances will the machine be

allowed to be returned without an understanding and direct instructions from Acme Harvesting Company. If notice of difficulty is not received as above stated, it will be conclusive evidence of satisfaction.''

The order was given through the plaintiff's local agents at Jasper, Missouri, but it appears that one Neil was present representing plaintiff at the time the order was signed and given and that he is the man who later took the defendants' notes in payment of the same, on which this suit is based.

The defendants are father and son, but as the transaction was had largely with the father, J. M. Gasperson, he will be regarded in this statement as the defendant, and where the word ''defendant'' is used reference is had to him.

The binder was delivered at Jasper, Missouri, at the proper time and was moved to the defendants' farm for the purpose of being used during the harvest season of 1910. The local agents sent a man to the farm for the purpose of setting up the machine and putting it in running order. The evidence shows that the machine failed to work from the start and that much difficulty was had in trying to get it to work properly on the day the man furnished by the local agents was there assisting. It is further shown that the defendants notified the local agents at once and that these agents, in person or by a man sent by them for that purpose, tried to fix the machine and get it to work properly on three or four different days immediately following.

After six or seven days of unsatisfactory work this agent Neil appeared at the farm and spent considerable time in repairing, changing and trying to adjust the machinery so as to make it work. It would seem he had no better success in this respect than the local dealers.

On July 11 Mr. Neil was at the farm and worked on the machine and the evidence shows that defendant

at that time told him, "If he could not put it in opera-
tion, I (defendant) wanted him to tell me where to put
the thing." At that time defendant signed and gave
to Mr. Neil the following statement:

"Your Mr. Neil had adjusted and started the 7 ft.
Acme Binder machine which I purchased from your
agent, Mr. Dugan & Kaufman, at Jasper in season of
1910, and said machine works to my entire satisfaction
and completely fills terms of warranty under which
said machine was purchased, *at the present time.*

P. O. Jasper      Signed J. M. Gasperson, Purchaser.
State Mo.        Signed ——————————, Operator.

"Experts and operators are required to have one
of these statements signed for each machine set up or
adjusted by them."

Endorsed on back as follows:

"Acme Har. Mch. Co.

   "Gen. Office

"Received

      "Jul. 13, 1910."

The defendant signing this instrument testified in
relation thereto that Mr. Neil represented that he
wanted a statement so he could show to the company
that he had been there and worked on the machine;
that defendant did not have his glasses and could not
see to read it and that Mr. Neil replied, "I will just
make a statement I have been here and worked on the
machine." The cross-examination, however, shows
that defendant did know something of the nature of
this instrument and that at his instance Mr. Neil
wrote in the words, "at the present time."

The evidence further shows that after Mr. Neil
left on this occasion and it was found that the binder
did not work any better than before, defendant told the
local agents that the machine was not doing good work
and that he wanted to return it. In the meantime the
defendants had hired another binder, with which they

Machine Co. v. Gasperson.

did a considerable part of their work and the cutting season was about over.

On September 2 Mr. Neil was again at the defendants' farm where they were or had been trying to cut some flax, and found that the machine was not yet doing good or satisfactory work. At this time he signed and gave to defendants the following written agreement: •

"In consideration of the fact that Mr. J. M. Gasperson's binder was missing bundles and breaking chain No. 42 at the close of cutting season, and that he is today making settlement for said machine, I, B. M. Neil, in the interest of the Acme Har. Co., agree to put said machine in order next season. Mr. Gasperson giving due notice to Acme Har. Co. of K. C. before cutting time.

"B. M. NEIL."

The notes which are sued on in this case were executed at that time, though dated back to correspond with the time the order was first given. The defendants say that they were induced to give these notes and to retain the machine until the next season by reason of this written agreement, and that they had offered to both Mr. Neil and to the local agents to return the binder and they had declined this offer.

On January 12, 1911, the plaintiff wrote the following letter:

"Kansas City, Mo., Jan. 12, 1911.
"J. M. Gasperson, Jasper, Mo.

"Dear Sir:—We refer to your note for $70, past due since the first day of October, 1910, about which we have had *considerable correspondence*.

"We *understand* that you claim this machine *did not work* to your satisfaction, and we are advised by our traveler, Mr. Neil, that he gave you an agreement to the effect that he would place this machine in satisfactory running order, this agreement in writing.

"Therefore, we can see no reason why you do not take care of this note, as you hold *our* agreement that *we* will fix the machine, and we trust you will see your way clear to favor us with a check in payment of the note and very much oblige.        Yours truly,

"ACME HARVESTING MACHINE CO.,
"By H. E. GILMORE, Cashier."

It further appears that on May 7, 1911, Mr. Neil wrote a letter to defendant in which he inquires about whether he should come and fix the binder so it would work satisfactorily. The plaintiff offered in evidence, without any explanation of why it did not produce the original, a copy of a letter purporting to have been written by defendant to Mr. Neil, dated May 13, 1911. Defendant denied that this was a correct copy of his letter and the court rightfully excluded it. The copy offered shows that defendants expressed great dissatisfaction with the binder they had been trying to use and the way in which plaintiff had treated them and that they needed a new binder.

It is evident that defendant had written some letter of this date, as is shown by the following letter put in evidence by the defendants.

"Cary Hotel,      Bolivar, Mo., May 21, 1911.
"Mr. J. M. Gasperson, Jasper, Mo.

"Dear Sir:—I am in receipt of *your* letter of May 13 and I will say that I want to fix your binder if you want it fixed. And I suppose you would not want me to fix it until cutting time and that is the reason I wrote you.

"Now what I want to do is this. I will come when you write me and I won't leave until the binder works satisfactorily, for then we can settle that note and then the company will not write you any more duns.

"Now when you want me to come just write me and I will come.        Yours very truly,
"B. M. NEIL,

"1025 Broad St., Springfield, Mo."

There is evidence that defendant wrote a further letter some time in May in which he said that he could not designate the day they could go to harvesting, but that it would be about the tenth of June. He said he wrote this in plenty of time to give plaintiff an opportunity to come and fix the machine for the season of 1911. In this he is corroborated by the fact that plaintiff offered in evidence a copy of a letter written by defendant, and which he admitted was a correct copy, but for some reason the plaintiff withdrew the offer and did not put the letter in evidence.

The defendants further testified that plaintiff did nothing whatever towards making or attempting to make the machine do proper work during the season of 1911. That defendants tried to use it again but that it worked no better than before and that they were again compelled to hire another machine to do a large part of their work. Defendant also testified that about October 9, 1911, he wrote plaintiff a letter, addressed to it at Peoria, Illinois, in which he stated that the machine failed to do the work they guaranteed it to do; that he couldn't do anything with it; refused to pay the notes and asked them to notify him where to put the machine, and that he stood ready to comply with his contract and return the machine. He said that the plaintiff and its agents always declined to consent to his returning the binder.

The evidence shows that the trouble with the machine was that the machinery would not work; that it missed bundles every now and then and would clog up and drag down the grain. The evidence shows that the defendants lost much time in trying to fix the machine and in waiting for it to be fixed and that they lost considerable grain by its being dragged down and not properly cut.

As the defendants dismissed as to the second count of their answer and did not seek to recover more than

enough to offset the notes sued on, the evidence in this respect is only considered as tending to show that the binder did not comply with the warranty in doing good and efficient work for which it was intended. There is no question made but that the machine was properly operated by the defendants so far as their part of the work is concerned.

## OPINION.

As before noted the two counts of the answer are substantially the same as to the facts stated and are each based on a breach of the written warranty. They differ only in the relief prayed; the one pleading the facts stated in each as a failure of consideration of the notes sued on; the other pleading the same facts as a counterclaim, specifying the elements of damages and asking a judgment in excess of the amount of the notes.

The law seems to be that a defendant in a suit for the purchase price of machinery or other such articles may plead both a failure of consideration and also a breach of warranty as a counterclaim, where same are not inconsistent. [Keystone Implement Co. v. Leonard 40 Mo. App. 477, 481; Boulware v. Manufacturing Co., 152 Mo. App. 567, 576, 134 S. W. 7; s. c., 163 Mo. App. 524.]

The failure of consideration only goes to the extent of the purchase price and the proof would be confined to showing that the machine did not measure up to the terms of the warranty, express or implied. The pleading or proof may sustain only a partial failure of consideration and defeat the plaintiff's recovery *pro tanto*. [R. S. 1909, sec. 1974.]

As a counterclaim, the recovery may be had for a greater or lesser amount than plaintiff's claim and the pleading and proof would extend to special extraneous damages. [Crenshaw v. Looker, 185 Mo. 375, 387, 84 S. W. 885.]

A failure of consideration may be based on an implied warranty as well as an express warranty; and there is always an implied warranty, in the absence of an express warranty to the same effect or inconsistent therewith, that an article sold for a special purpose is suitable for such purpose. [Boulware v. Manufacturing Co., 152 Mo. App. 567, 576, 134 S. W. 7; New Birdsall Co. v. Keys, 99 Mo. App. 458, 463, 74 S. W. 12.]

It is true, as plaintiff contends, that, where there is a special contract of warranty imposing conditions precedent, it takes the place of a like or inconsistent implied warranty and defendants cannot plead and prove failure of the implied warranty and thus escape the performance of the conditions precedent. [Boyer v. Neel, 50 Mo. App. 26, 35; Wood Machine Co. v. Bobbst, 56 Mo. App. 427.]

In the first case the court said:

"The decisions in this State, which allow this defense to be set up, allow it to be set up either where there is an *implied warranty* of the goodness of the thing sold, or where there is an *express warranty* of such goodness; but no decision allows it to be set up so as to do away with the terms of a special contract, which the parties to the sale have seen fit to make for their government in case the thing sold turns out to be defective or worthless."

In the present case the express warranty pleaded does not differ in legal effect from the implied warranty of fitness for the purpose for which sold; and the proof that will sustain one will sustain the other. The effect therefore of the express warranty in the present contract is to impose on the purchaser the conditions precedent annexed thereto and which would not be imposed on him if the defense was based on the implied warranty to the same effect. Thus, in case of an implied contract the purchaser is not bound to return the property in case the machine fails to work,

or even to give notice of such defect, and he may continue to use it in the defective condition without losing his defense. [New Birdsall Co. v. Keys, 99 Mo. App. 458, 463, 74 S. W. 12, and cases cited.]

The effect of a failure to return or offer to return is that if the machine is of value for any purpose or may be repaired the defense avails only as a partial failure of consideration. [Brown v. Weldon, 99 Mo. 564, 13 S. W. 342; Buss.v. Window Glass Co., 146 Mo. App. 71, 83, 123 S. W. 949; June & Co. v. Falkinburg, 89 Mo. App. 563.]

It follows from the above, as the plaintiff contends, that in this case, where the defense is based on the written warranty with conditions precedent annexed thereto, that defendant is bound by said conditions and to make his defense available he must prove a compliance on his part with all the conditions imposed. [Bank v. Barts, 130 Mo. App. 635, 638, 109 S. W. 1057; Nichols-Shepard Co. v. Rhoadman, 112 Mo. App. 299, 308, 87 S. W. 62; Nichols-Shepherd & Co. v. Larkin, 79 Mo. 264.]

If we can apply these principles correctly to the case at bar this court will reach a correct decision. And to do this we must determine whether the trial court tried the case and submitted it to the jury on instructions conforming to these principles, keeping in mind that the finding of the jury on any fact, where there is any substantial evidence to sustain it, makes that fact conclusive here.

The trial court refused to direct a verdict for plaintiff and at its instance gave this instruction:

"The court instructs the jury that under the pleadings and the evidence in this case, you will find the issues in favor of the plaintiff in the sum of $140, with interest thereon at the rate of 8 per cent from the 22nd day of June, 1910, to this date, unless you believe and find from the evidence that said machine was sold under a warranty that it would, when properly oper-

ated, do good and efficient work for which it was intended, and that said machine was properly operated and failed to do good efficient work· for which it was intended while being properly operated.''

This instruction seems to eliminate all questions except that of the 'machine doing good work and impliedly authorizes a finding for defendants on an adverse finding of that issue; and the jury did so find.

The court gave a lengthy instruction for defendant following and requiring the jury to find the facts substantially as stated in the answer and winding up as follows:

''And if the jury further believe from the evidence that said harvester at the time and place it was purchased was wholly worthless for the purpose for which it was purchased by the defendants and that the defendants offered to return said harvester after the plaintiff had failed to put said harvester in order during the said next season, if plaintiff did so fail, or if the jury further believe from the evidence that said harvester at the time and place it was purchased by the defendants was of no value whatever for any purpose, then the jury will find the issues for the defendants.''

Plaintiff contends that this instruction is erroneous in authorizing the jury to find for defendants if they found in addition to the other facts that the machine was ''useless for the purpose for which it was sold;'' thus ignoring, as is claimed, the fact that the defense is on a special contract of warranty and not on an implied warranty of fitness for the purpose for which sold. But plaintiff's reasoning is faulty in not recognizing that the special warranty of ''doing good and efficient work for which it is intended'' would be breached by proof and finding that it was ''useless'' for such purpose.

The same is true of the criticism of permitting evidence to show the purpose (cutting grain) for which

the machine was sold and that it did not do that work well. This warranty clause is sufficiently broad, and is evidently designed, to cover any kind of machinery sold, as for instance, a grain drill or hay rake. Even if it is within common knowledge, and the word "binder" in the contract is sufficient in itself to show the purpose for which it was intended or purchased to be used, we cannot put the trial court in error for admitting evidence that it was purchased for cutting grain, as that is only equivalent to showing what this particular kind of a machine was intended for.

It is also claimed that the conditional warranty requires a return of the machine to the place where received in all cases where it proves permanently defective, and that there is nothing to show a compliance with the requirement; and, subordinate to this, that, as defendants alleged generally a compliance with their part of the contract, no waiver can be claimed. In this plaintiff ignores the further stipulation of the conditional warranty that, "Under no circumstances will the machine be allowed to be returned without an *understanding* and *direct instructions* from Acme Harvesting Machine Company." Under this a return without instructions from plaintiff would be set up as a failure to comply with the contract. The answer pleads that defendants offered to return the machine and could get no understanding or instructions allowing them to do so, and that plaintiff refused to receive same; and the instruction complained of required the jury to so find. It is questionable whether any return of the machine is required in the absence of instructions from plaintiff to do so; and if so required it might be and was waived.

It is also complained that defendants' instruction is wrong in allowing the jury to find for defendants provided the machine was found to be "wholly worthless for any purpose," as the evidence did not sustain any such finding. This is true; but no such test is

necessary. Where the machine is returned or offered to be returned as in this case, then all that is necessary to be found is that it failed to do good work as a binder, that is, "did not do good and efficient work for which it is intended." It need not be "worthless" even for that purpose, much less for any purpose; and so the instruction given for plaintiff said. The error is in plaintiff's favor in that the jury had to find the machine more defective than the warranty required.

It is also claimed that the defendant by giving the written acceptance on July 11, and thereafter retaining and using the machine waived all defects and released the warranty. This acceptance was pleaded in the reply as an absolute bar to the defense of failure of consideration, and is so urged here, on the ground that the warranty is not a continuing one and being once satisfied is at an end. This would be true provided the acceptance was absolute and conclusively showed the binder to then comply with the warranty. Defendant testified that he could not read it for want of his glasses and that it was given for no such purpose. The words added "at the present time" give it a peculiar significance. Besides, the agent Neil later gave the special agreement to put the machine in order for the coming year. This acceptance was in evidence, together with the circumstances under which it was given, and was considered by the jury, without need of a special instruction telling them to do so, in determining from all the facts whether the machine did good and efficient work and was accepted by defendants as such.

It is not necessary to discuss at great length the special contract made by the agent Neil on September 9, 1910. All that defendant claims for it is, that he was thereby induced to execute the notes sued on, retain the machine and give plaintiff another chance to make the machine do good work the next season. There is some evidence that Neil was the plaintiff's

general agent, and the order and notes were given under his jurisdiction; at least plaintiff's letter of January 12, 1911, shows plaintiff's knowledge of this agreement, acknowledges his authority and says that his agreement is "our agreement that we will fix the machine;" and plaintiff tried to induce defendants to pay the note in reliance on this agreement. The facts in this respect differ materially from those in Machine Co. v. Heath, 65 Mo. App. 461, 467.

Nor can we agree that the effect of this special contract was to satisfy the warranty given, terminate the old contract and substitute a new one, the measure of damages for breach of which is the reasonable cost of repairing the defects specified. Nor would it require at the next season the beginning anew of the process specified for determining whether or not the machine did, or could be made to come up to the warranty. There was no new machine given in place of the old one as in Kingman v. Schulenberger, 64 Mo. App. 548, 556. It more nearly continued the warranty of quality as before but without any special conditions. [New Birdsall Co. v. Keys, 99 Mo. App. 458, 74 S. W. 12; Machine Co. v. Heath, 65 Mo. App. 461.]

Some other questions are discussed by counsel and have been considered but the length of this opinion cautions us to stop here. We find that the case was well tried and affirm the judgment. All concur.

## ON MOTION FOR REHEARING.

PER CURIAM.—We have held in this case that the evidence justified, and the instructions given for defendants required, the finding among other things that the defendants did give notices to plaintiff and its agents of the defective condition of the machine in question and its failure to do good work as required by the written warranty and gave it the opportunity to remedy the defect and that it failed to do so; and

this distinguished the case from Wood Mowing and Reaping Machine Co. v. Bobbst, 56 Mo. App. 427.

It is not necessary to submit by instruction every disputed evidentiary fact arising in a case even if the same is pleaded, in an instruction purporting to cover the whole case. It is only necessary to submit the essential facts warranting a recovery and not omit the essential ultimate facts which would defeat such recovery or vice versa. The signing of the paper purporting to be an acceptance of the machine as doing good work, after it had been worked on and repaired by plaintiff, was mere evidence to be weighed in determining whether the machine did in fact then do good and efficient work and released plaintiff from further efforts and responsibility in that behalf; and it was so treated and regarded by plaintiff in its instruction No. 2 refused, telling the jury to take the signing of this acceptance into consideration in determining that fact. That fact was the ultimate one to be determined by the jury as constituting a defense, and it was not necessary or proper to either submit the evidentiary fact of the signing of the written acceptance to the jury, or to comment on it as one of the facts to be weighed in determining the ultimate fact of the machine doing good and efficient work.

The motion for rehearing is overruled.