T. F. PRITCHARD v. GUY A. THOMPSON, Trustee of THE MISSOURI PACIFIC RAILROAD COMPANY, Appellant.—156 S. W. (2d) 652.

Division One, October 30, 1941.

Motion for Rehearing Withdrawn, November 24, 1941.

*Thos. J. Cole* and *McReynolds.& Flanigan* for appellant.

*Edward V. Sweeney* and *Sizer & Myers* for respondent.

834

BRADLEY, C.—This is an action under the Federal Employers' Liability Act, 45 U. S. C. A., Sec. 51 et seq., to recover for injuries resulting from a fall from a trestle. Plaintiff recovered a judgment for $20,000, and defendant appealed.

Plaintiff was a bridge carpenter, and on the day of his injury, February 10, 1937, the bridge crew, under foreman Brooks, was engaged in putting new stringers in a bridge about three miles south of Aurora, Missouri. The bridge extended north and south and was constructed on wooden bents, the cross timbers of which are called caps. On top of the caps, and on either side of the bridge, were four wooden stringers about two inches apart. These stringers were twenty-four feet long, eight inches thick, and sixteen high. Near the ends of the caps and on top thereof, were boards, called shims, about two inches in thickness, twelve inches in width, and forty-four inches in length nailed to the caps. The bents were twelve feet apart, and a twenty-four foot stringer rested on three caps or bents, one at either end of the stringer and one midway. The four stringers were separated by iron spools and bolted together by four bolts forty-four inches in length, and when bolted together the four stringers make what is called a cord. To put in the new stringers the track was lifted with jacks, the old cord removed and the new stringers lifted by means of a windlass or crab on a push car, and placed by the men on the bridge.

Plaintiff fell from the east side of the bridge and from the end of the middle cap. He was on his knees on the end of the cap. The

east, or outside stringer had been so placed on the shims that about half of its eight-inch surface upon which it rested extended over the end of the shim. The outside stringer, extending over the shim, as stated, tilted over, knocked plaintiff from the end of the cap, and both he and the stringer fell twelve or fourteen feet. Plaintiff was seriously and permanently injured.

Five grounds of negligence were alleged, but only three of these were submitted, viz.: (1) Failure to exercise ordinary care to furnish plaintiff a reasonably safe place to work; (2) that defendant's employees, without warning to plaintiff, negligently placed the outside stringer on the shims in such position that it tilted and caused plaintiff to fall; and (3) that defendant's foreman, without warning, negligently directed plaintiff to get down on the end of the cap to place the bolts, when he (the foreman) knew, or in the exercise of ordinary care, could have known that the stringer was not properly placed on the shims and would likely tilt and cause plaintiff to fall.

The answer was a general denial and a plea of contributory negligence, alleging "that plaintiff was employed by defendant as a bridge carpenter at said time and place and was thoroughly familiar with the duties of such employment and plaintiff assisted in placing in position in said bridge the stringer or timber which plaintiff alleges fell from said bridge and plaintiff well knew that said stringer or timber was not bolted or otherwise secured or fastened in any way and was likely to fall from said bridge at any time, and that said stringer or timber was caused to fall from said bridge by reason of the fact that plaintiff took hold of said stringer or timber as it lay in position and by coming in contact with a bolt protruding from said stringer and when the same was not bolted, fastened or otherwise secured in position in any way, which fact plaintiff well knew, and that the injury to plaintiff, if any, resulting from plaintiff's fall from said bridge was due to and caused by the negligence of the plaintiff, as aforesaid." Defendant also pleaded a release, and alleged that plaintiff refused to accept defendant's offer of free hospital service, and that had he not so refused, he "could have had his alleged injuries cured without serious disability on his part and without any alleged permanent injury."

The reply put in issue all new questions raised in the answer.

Error is assigned on three grounds, viz.: (1) On refusing defendant's demurrer to the evidence at the close of the whole case; (2) on instructing the jury that it was defendant's duty to exercise ordinary care to provide plaintiff a reasonably safe place to work; and (3) on instructing the jury that it was defendant's duty to warn plaintiff of the precarious condition of the stringer that tilted and fell and caused plaintiff to fall.

It may be said that the demurrer to the evidence is bottomed on the contentions that plaintiff assumed whatever risk he encountered,

and that there was no substantial evidence to support either ground of alleged negligence upon which the cause was submitted.

■ Did plaintiff assume the risk? In cases under the Federal Employers' Liability Act, federal court decisions control. [York v. St. Louis-San Francisco Ry. Co., 333 Mo. 105, 62 S. W. (2d) 475, l. c. 477.] The rule, under the act, of assumption of risk is stated in Gila Valley Ry. Co. v. Hall, 232 U. S. 94, 34 Sup. Ct. 229, 58 L. Ed. 521, as follows (232 U. S. l. c. 102): "In order to charge an employee with the assumption of a risk attributable to a defect due to the employer's negligence, it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety; or else such danger must have been so obvious that an ordinarily prudent person under the circumstances would have appreciated it."

"The rule is well settled by controlling decisions of the United States courts that under the federal statute a servant assumes extraordinary risks incident to his employment or risks caused by the master's negligence which are obvious or full known and appreciated by him." [O'Donnell v. Baltimore & O. R. Co., 324 Mo. 1097, 26 S. W. (2d) 929, l. c. 933, and cases there cited.]

Plaintiff fell about 1:30 P. M. For the greater part of the forenoon he had been operating the crab, on the push car, by which the stringers were hoisted to the caps or bents. Other employees had placed the stringers after they were hoisted, and plaintiff, so far as appears, did not know that the offending stringer was in such precarious position on the shims. The shims came within about twelve inches of the end of the cap, and the outside stringer, properly placed, left about two inches of the shim exposed. As stated, the eight inch surface of the stringer rested on the cap, and if it had extended over the shims, say three inches, instead of four, it would not likely have tilted, and still the end of the shim would not have been exposed. In order for plaintiff to have appreciated the precarious position of the stringer on the shims, he would have had to look under the stringer at the shim or felt under with his fingers. As stated, defendant alleged that the stringer fell because plaintiff took hold of it and that he came in contact with a protruding bolt. Plaintiff testified that he did not take hold of the stringer and that he did not come in contact with the protruding bolt. We do not think that the danger was so obvious as to justify a holding that plaintiff, as a matter of law, assumed the risk. We might say that defendant did not plead assumption of risk and asked no instruction on that theory.

■ Was there substantial evidence to support either ground of alleged negligence upon which the cause was submitted? The three grounds, upon which the cause went to the jury, were submitted in separate instructions. Plaintiff's instruction No. 1 told

the jury that it was the duty of defendant to exercise ordinary care to furnish him a reasonably safe place to work, and then went on to direct the jury to find for plaintiff if they found that "while in the performance of his duties plaintiff was required to take a position on the east end of the middle cap in said bridge for the purpose of looking through the holes in the stringers so as to place an iron bolt through said stringers, if you so find, and that plaintiff did take a position upon his knees on the east end of said middle cap, and that when he started to look through the holes in the stringers, for the purpose of inserting the iron bolt, if you so find, and that the east stringer was pivoted in a tilting position on the caps in said bridge by an employee, or employees, of the defendant other than plaintiff, if you so find, and that on account of the pivoted and tilting position in which said stringer was placed, if you so find, it suddenly turned and fell from its position and knocked plaintiff off of the bent or cap, if you so find, and hurled him to the bottom of the ravine, and injured him, if you so find, and that such injuries, if any, were directly caused in whole or in part by reason of the negligence of the defendant, if any, his agents, servants, and employees, in the specific instances as hereinafter defined, if you so find, then your verdict should be for the plaintiff, provided you further find that the release relied upon by the defendant was not executed by the plaintiff, or was procured through fraud or mistake as in these instructions defined."

Plaintiff's instruction No. 2 told the jury that one ground of negligence relied upon by the plaintiff was "that the defendant failed to exercise ordinary care to furnish plaintiff with a reasonably safe place to work, in that the outer stringer on the east end of said bridge was unbalanced, and placed too close to the outer edge of the shims upon which the stringer was balanced." Instruction No. 2 directed a verdict for plaintiff if the jury found that the defendant failed "to exercise ordinary care to furnish plaintiff with a reasonably safe place to work, and did cause the stringer on the east end of said bridge to be pivoted and unbalanced, and placed too close to the outer edge of the shims upon which said stringer was resting, if you so find, and that by reason of the position of said stringer, plaintiff's place where he was required to work, if you so find, was not reasonably safe, and that the acts and conduct, if any, of defendant, his agents, servants, and employees, if you so find, in placing said stringer in such position, if you so find, was not under all the facts and circumstances in the exercise of ordinary care, if you so find, then you are warranted in finding the defendant guilty of negligence; and if you further find that such negligence, if any, acting alone or in conjunction with any one or more specific acts of negligence, if any, as in these instructions defined, in whole or in part, caused injuries to plaintiff, if any, then your verdict should be

for the plaintiff; provided, you further find that the release relied upon by the defendant was not executed by the plaintiff or was procured by fraud or mistake as in these instructions defined."

Plaintiff's instruction No. 3 more specifically submitted the alleged negligence of the employees who placed the stringer in the position complained of. Instruction No. 4 submitted the alleged negligence of the foreman in ordering plaintiff, without warning of the stringer's position, to place the bolts through the stringers.

Stone v. Mo. Pac. Ry. Co. (Mo.), 293 S. W. 367, was under the Federal Employers' Liability Act. Plaintiff, in that case, was a common laborer and was assisting bridge carpenters to repair a bridge, which was 700 feet long and seventy or eighty feet high at the highest place. The bridge was between Crane, Missouri, and Cotter, Arkansas, and was built in upright sections or bents fourteen feet apart, and these in turn were braced and held together by longitudinal braces, each twenty-eight feet long, running lengthwise in the bridge on three different levels or decks, the first or lower deck being about twenty feet above the ground, the longitudes in each deck consisting of four 6 or 8 by 10-inch sawed timbers, one on each side of the bridge and two more between these. The plaintiff and others were directed by the foreman to go from the north end to a point near the center of the bridge and remove an upright timber or post. In order to do this it was necessary to walk the longitude on top of the first deck. A defective place in the longitude gave way and plaintiff fell.

It was alleged in the Stone case that it was defendant's duty "to furnish plaintiff a reasonably safe place to work and perform his said duties, and well knowing the height, length, and general make-up of said trestle, and knowing that in repairing trestles it required the employees to climb upon and walk upon the timbers known as longitudes, it should have inspected all of said timbers at reasonable intervals, and if any upon inspection showed a defect, then mark or spot such timber in such a way that the employees would be apprised thereof." The very place which gave way had been inspected and condemned as defective, but neither the plaintiff nor his foreman knew this. It was held, under the facts, that the rule that it is the duty of the employer to exercise ordinary care to furnish the employee with a reasonably safe place to work did not apply.

In ruling the question the court quoted, with approval, from K. C. So. Ry. Co. v. Billingslea, 116 Fed. 335, l. c. 340, as follows: "As a general rule, it is the master's duty to furnish a reasonably safe place for his servants to work, but this rule has no application where the very work the servant is employed to do and assist in doing consists in making a dangerous place safe, and particularly where the dangerous character of the place is fully apparent, and known to the servant." After so quoting, the court said (293 S. W. l. c. 370): "The doctrine above stated has also been applied in Allen v. Railroad

Co., 14 Tex. Civ. App. 344, 37 S. W. 171, denying recovery to a bridge carpenter, who, while repairing a bridge, was thrown to the ground by stepping on a loose plank; in Louisville & N. R. Co. v. McIntosh, 183 Ky. 571, 210 S. W. 181, l. c. 183, denying recovery to a section hand who fell when a decayed portion of a cross-tie gave way under his foot; and in Carlson v. Railway Co., 21 Or. 450, 28 P. 497, the court said: 'Where a servant is employed to put a thing in a safe and suitable condition for use, it would be unreasonable and inconsistent to require the master to have it in safe condition and good repair for the purpose of such employment.' ''

''In construction work where conditions are constantly changing, the duty of providing a safe place to work cannot be imposed to the extent as in the case of work done in a more permanent location because, under these conditions, it is impossible to keep the place of work, the actual physical location in which the work is done, as safe as a place in a completed structure.'' [Kelso v. W. A. Ross Construction Co. et al., 337 Mo. 202, 85 S. W. (2d) 527, l. c. 535, and cases there cited.]

Under Sec. 1 of the Federal Employers' Liability Act, 45 U. S. C. A., Sec. 51, defendant was liable to plaintiff for ''the negligence of any of its officers, agents, or employees.'' Repair work is comparable to construction work. In the Kelso case, supra, it is said (85 S. W. (2d) l. c. 535): ''In such work (construction) not only is the danger of the place of work itself greater because it is shifting and changing, but there is usually also greater danger from the use of instrumentalities with which various phases of work are carried on by other employees. It, therefore, seems reasonable that the duty to provide a safe method of carrying on the work, by providing that the instrumentalities with which it is done shall be safely used, should increase, as the duty with regard to the place in which the work is done decreases.'' Under the facts in the present case, and under the law, as we see it, the reasonably safe place to work rule does not apply.

██ Defendant relies, we might say, entirely on the Stone case, supra. In that case the only negligence relied upon was the breach of the alleged duty to exercise ordinary care to furnish the plaintiff with a reasonably safe place to work, while in the present case, plaintiff, in addition to the reasonably safe place rule, relies upon the alleged negligence of his fellow workers who left the stringer half over the shims, and on the alleged negligence of his foreman in directing him, without warning of the condition, to bolt the cord.

As above stated, plaintiff had nothing to do with placing the stringer, except to operate the crab. He had had no chance to know of the stringer's position on the shims. Foreman Brooks, in the forenoon, while the old cord was being removed and the new stringers laid for the new cord, was on the bridge ''and was giving instructions about what to do; how to handle the work.'' About 1 P. M.,

after lunch, the foreman sent part of the crew to Aurora for cap irons, and told plaintiff "to help the boys put in bolts until the other boys got back from town." Plaintiff testified that he walked out on the bridge with the foreman, and that when they reached the middle bent, "there was a bolt sticking out where the boys quit before noon putting in bolts," and that the foreman said, "you just as well start putting in bolts right there," and that at that place he, plaintiff, climbed down to the end of the cap from which he fell.

In Crane v. Liberty Foundry Co., 322 Mo. 592, 17 S. W. (2d) 945, l. c. 959, the court said: "The order and direction of the foreman, Squires, given to plaintiff by signal or motion, to come on with the empty shank, was tantamount to an' implied assurance that the track and switch were reasonably safe, and that plaintiff could proceed with safety thereover."

We think that plaintiff was entitled to go to the jury on the alleged negligence of his fellow workers in leaving the stringer, in such precarious condition on the shims, and on the alleged negligence of the foreman in telling him, without warning of the condition of the stringer, to start bolting up the cord.

It is our conclusion that defendant's demurrer to the evidence was properly refused.

What we have said disposes of the case. Because of the error in instructing that it was the duty of defendant to exercise ordinary care to furnish plaintiff a reasonably safe place to work, the judgment should be reversed and the cause remanded. It is so ordered. *Hyde* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by Bradley, C., is adopted as the opinion of the court. All the judges concur.