EMALYNE COATS, RESPONDENT, V. MARVIN B. OLD, D/B/A YELLOW CAB
& BAGGAGE CO., AND DEWEY TURNER, APPELLANTS.—167 S. W.
(2d) 652.

Kansas City Court of Appeals.   December 14, 1943.

*Edwin C. Orr* for respondent.

354

*Howard F. Majors* for appellants.

BLAND, J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $1000, and defendants have appealed.

The action grew out of a collision, occurring on the 29th day of March, 1941, between a taxicab, in which plaintiff was a passenger, and an automobile. The collision took place at the intersection of North Eighth Street and Park Avenue, public streets, in the City of Columbia. The taxicab was owned by the defendant, Old, and was being driven by his employee, the defendant, Turner.

Complaint is made of the giving of plaintiff's Instruction P-A, which told the jury, among other things, that if they found "that the taxicab mentioned in evidence was then and there being operated at a rate of speed which was high, dangerous and excessive under the circumstances then and there existing, and that the defendants were negligent in so doing, if you so find, *and if you further find and believe from the evidence that because of the negligent operation of said taxicab by the defendants at said time and place, provided you find it was negligently operated, it was caused to and did collide with an automobile then and there driven by one W. J. Blackwell, directly causing or directly contributing to cause plaintiff to be injured,* then your verdict will be for the plaintiff." (Italics ours.)

It is insisted that that part of the instruction italicized constitutes a submission of general negligence, and that the instruction does not require the jury to find that the excessive speed of the taxicab, submitted therein, directly caused, contributed to cause, or was the proximate cause, of plaintiff's injury.

One of the acts of negligence pleaded in the petition was excessive speed of the taxicab and this alleged act of negligence was attempted to be submitted in plaintiff's Instruction P-A. We disagree with the contention of the defendants that the word "the" used before the words "negligent operation", in that part of the instruction italicized is equivalent to the use of the word "any". The word "the" is "a definite article" (Webster's New International Dictionary), and, as used in the instruction, refers to the specific negligence theretofore mentioned in the instruction. We think that that part of the instruction complained of cannot be separated from the rest and, therefore, it does not submit general negligence, but negligent speed and such as being the proximate cause of the injury. [Crowley v. American Car & Foundry Co., 279 S. W. 212.]

We have examined Morris v. Deitrich, 118 S. W. (2d) 46, and other cases cited by defendant on this point, and find them not applicable.

It is insisted that the court erred in the giving of plaintiff's Instruction P-D, reading as follows:

"If from the evidence in this case and the instructions of the Court your verdict is in favor of the plaintiff, then it becomes your duty to allow her such a sum of money as you find from the evidence will reasonably and fairly compensate her for all damages you find from the evidence have directly resulted to her by reason of the defendants' negligence, if you so find that the defendants were negligent."

It is urged that this instruction constitutes a submission of general negligence, giving the jury a roving commission, and does not submit the specific acts of negligence (excessive speed) relied upon by plaintiff and sworn by the evidence. There is no merit in this contention. [Rush v. Hollingsworth, 89 S. W. (2d) 535; Laycock v. United Rys. Co., 235 S. W. 91.]

It is insisted that the court erred in giving the instruction for the reason that it does not limit recovery for various specific items of plaintiff's alleged damages to the amount claimed for such specific items of damage in plaintiff's petition.

In the petition plaintiff alleges special damages as follows: Doctors' bills $25, Hospital bill $25, Domestic help $25, Additional household expenses $50, Earnings lost $132.

It is not contended that there was any evidence tending to show that the damages for any of these various items were greater than claimed in the petition, consequently, there is no merit in the contention. [1 Raymond, Missouri Instructions, pp. 128, 129; Leighton v. Davis, 260 S. W. 986; Scanlon v. Kansas City, 81 S. W. (2d) 939; Peck v. W. F. Williamson Adv. Serv., etc., 68 S. W. (2d) 847; Burnison v. Sonders, 35 S. W. (2d) 619; Reaves v. Gordon et al., 45 S. W. (2d) 99.]

It is insisted that the court erred in giving plaintiff's Instruction P-C, which reads as follows:

"The court instructs the jury that the operator of an automobile in this State is required to exercise the highest degree of care, that is, the degree of care which a very prudent person would exercise under the same or similar circumstances and in this connection you are instructed that the words "carelessly" and "negligently" and "carelessness" and "negligence" as used in these instructions mean the failure to exercise the highest degree of care."

It is contended that that part of the instruction, stating the degree of care that defendants were required to exercise, is a statement of a mere abstract proposition of law and, therefore, the instruction is erroneous. It has been held that such an instruction is not a statement of an abstract proposition of law (State ex rel. Berberich v. Haid, 64 S. W. (2d) 667, 670; Leimkuehler v. Wessendorf, 18 S. W. (2d) 445), and, even if it were, instructions stating mere abstract propositions of law are not erroneous unless they direct a verdict or are otherwise misleading. [McGrew v. The Mo. Pac. Ry. Co., 109 Mo. 582.] The instruction was not improper under all of the circumstances. [State ex rel. Berberich v. Haid, supra; Cool v. Peterson, 189 Mo. App. 717.] We have examined Schipper v. Brashear Truck Co., 132 S. W. (2d) 993, and other cases cited by the defendants on this point and find them of no aid to them.

It is insisted that the court erred in admitting testimony of plaintiff concerning the payment of the wages of a maid and a laundress employed in the home of plaintiff and her husband after plaintiff's injury, for the reason that plaintiff was a married woman and there is no evidence, it is claimed, that such items of expense were incurred or paid by plaintiff; that such items were elements of damages recoverable only by her husband.

Plaintiff's husband testified: "My wife worked at Newberry's store and had her own money from her work and we divided up the expenses, she paid what part she was supposed to pay at the house. She paid her own bills. It took what money I earned for our living, for keeping the family, house rent and food. . . . The hospital bill was sent to my wife."

Plaintiff testified that she had worked at Newberry's for six years but had not worked for a month and a half prior to her injury on account of expecting the birth of a child; that she had been earning $11 per week; that during her illness, resulting from the injuries she received in the collision, she was required to have a maid. She was asked: "Q. What did *you* pay her? A. Seven dollars a week. . . . After the collision, tell the jury whether or not it was necessary for you to employ a laundress? A. I had my laundry done afterwards. Q. How much did it cost *you*, extra, a week to get your laundry done? A. Around two and a half. J. How long did you have your laundry done? A. It was three months before I did my own laundry. Q. *You were out two and a half a week for three months?* A. *Yes, sir.*" (Italics ours.)

Plaintiff's husband, a witness in her behalf, stated that he paid the maid out of his own salary; that his wife "didn't pay those bills herself as she didn't have any money."

From plaintiff's personal testimony, it was within the province of the jury to find that she paid the maid and the laundress out of her own money. Of course, she was not conclusively bound by the testimony of her husband that he paid them. Aside from this, the objection to the testimony was made after it was given and, if defendants had no opportunity to object until after the questions were answered, they should have moved to strike out the testimony. [Wolfson v. Cohen, 55 S. W. (2d) 677; Lux v. Milwaukee Mechanics' Inc. Co., 30 S. W. (2d) 1090.]

It is insisted that the court erred in failing to sustain defendants' objection to plaintiff's cross-examination of her witness, Mrs. Holman, for the reason that such constituted an impeachment by the plaintiff of her own witness.

On direct examination Mrs. Holman testified that she was in a dentist's office in the Guitar Building, two blocks from where the collision took place and, while she saw the collision, she could not tell how fast the automobile, which collided with the taxicab, was proceeding. She was then asked: "Q. You told me when I talked to you that it was going 25 or 30 miles an hour. Q. You did fix it at one time, didn't you?" She was further asked whether she had changed her judgment after she talked with defendants' attorney. The court sustained defendants' objections to these questions.

On re-direct examination the witness was asked: "Q. You are very interested, apparently—THE COURT: Objection sustained. MR.

ORR: There is a proper way—but objection is sustained. MR. ORR: You gave me a statement at your house several days ago, about the way in which this accident took place? A. I did not. At the time—MR. MAJOR: I still object to his attempting to impeach his own witness. THE COURT: Overruled. . . . MR. ORR: I talked to you at your house about the manner in which this collision took place, and I wrote down what you said? A. Partly what I said. Q. Didn't you tell me at that time you were sitting in Dr. Stephenson's office, that you saw the cab going down Eighth Street and you fixed the speed at 30 to 35 miles an hour—isn't that correct? Q. Do you deny that? A. No, I said it was a 'moderate' rate of speed and you said '30 or 35 miles an hour,' and I said it wasn't going to exceed that. Q. Didn't you, yourself, say, when I asked you what a moderate rate of speed was, didn't you tell me '30 or 35 miles an hour'? A. No, sir. Q. Do you deny that here? A. Yes, sir. Q. Under oath? A. Yes, sir. MR. MAJOR: Now I object, Your Honor. THE COURT: Mr. Orr, I am letting you examine this witness on the theory of surprise. MR. ORR: That is correct—that is what I am claiming. THE COURT: But this is a matter of argument. MR. MAJOR: Let me ask a question. (Addressing Mr. Orr) Do you maintain that you are surprised in putting this witness on the stand? MR. ORR: I am surprised that under oath she would testify contrary to what she said—THE COURT: Wait a minute. THE WITNESS: I didn't sign that. MR. ORR: Do you remember that I said 'it won't be necessary to ask you to sign this because you will not change your testimony?' A. I would not have signed it. Q. Didn't you tell me— THE COURT: Wait a minute, now. The objection will be sustained.''

It would appear that the court sustained all of the objections made by counsel for the defendants, except to the evidence relating to a statement having been given to plaintiff's attorney at the witness' house concerning the way in which the accident took place. The court did not err in permitting evidence relating to this matter, first, because the objection was made after the question was answered and, if defendants had no time to object until after the question was answered, they should have moved to strike out the testimony and, for the further reason, that it is competent to exhibit to a witness a statement made by her prior to her testimony at the trial, for the purpose of refreshing the witness' recollection, and such is not impeachment. [State v. Patton, 255 Mo. 245, 256-258; State v. Gregory, 339 Mo. 133, 148; State v. Murphy, 345 Mo. 358, 361.] At the time the court overruled the objection to the question and answer, to which we have alluded, nothing was indicated that counsel for plaintiff intended to do any more than to call the attention of the witness to the alleged statement, which properly could be done in connection with exhibiting it to her in order to refresh her memory. Whether

counsel for plaintiff exceeded his rights in reference to the matter, in what thereafter occurred, we are not called upon to say, for the reason that the court finally sustained the next objection (the last one) made by counsel for defendants. There was no exception made to the action of the court in failing to rule prior to the sustaining of this objection.

The judgment is affirmed. All concur.