TURNER HILTON, Respondent, v. GUY A. THOMPSON, Trustee, MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, Appellant, No. 41350—227 S. W. (2d) 675.

Division One, March 13, 1950.

178

*Thomas J. Cole, Oliver L. Salter* and *Lyman J. Bishop* for appellant.

*Everett Hullverson* and *Edward V. Sweeney* for respondent.

ASCHEMEYER, C.—This is an action under the Federal Employers' Liability Act (45 U. S. C. A. Sec. 51, et seq.) to recover damages for personal injuries. Plaintiff recovered a judgment for $37,000.00 and defendant has taken this appeal.

Since it is conceded that the evidence was sufficient to make a submissible case on appellant's liability, there is no reason to state the evidence in detail. Respondent was employed by appellant as a member of a bridge and building crew. He was injured at 10 A. M. on April 24, 1946, while assisting in the repair of a bridge on appellant's Springfield branch about six miles south of Springfield, Missouri. The crew was engaged in replacing wooden stringers on the bridge. In order to remove the old ones, the east rail of the track, with ties attached, had been jacked up several inches. While the bridge was in this condition, trains could not operate over it.

A foreman was in charge of and directed the repair crew. The equipment used included a motor car and a derrick or crane car. The derrick car was equipped with a boom and a hand operated winch or windlass. The motor car was attached to the derrick car. A stringer, 8″ x 16″ x 24′, weighing between 1200 and 1300 pounds, had been obtained at a pile several hundred feet south of the bridge. It was secured by a hook on the end of a cable from the windlass and was suspended in mid-air about sixteen to twenty inches from the east side of the derrick car. Nothing was used to counterbalance

the weight of the suspended stringer. The derrick car was then pulled back to the bridge by the motor car. Respondent and two other men rode on the derrick car, respondent being on the northeast corner.

The foreman was operating the motor car. They came on to the bridge at a speed estimated to be from three to six miles per hour. When they were a short distance out on the bridge, the derrick car became derailed, toppled to the east, and all three men were thrown off and fell to a public road which ran underneath the bridge. Respondent fell about fifteen feet, landing on his haunches and partly on his back. According to the evidence favorable to respondent, the foreman directed him to ride on the derrick car. In stopping the motor car, the foreman caused the derrick car to jerk and jolt, become overbalanced, and to be derailed. This was the first time the motor car had been used to move the derrick car which was usually pushed by the men. They were hurrying to replace the stringers so they would not delay a train which was due about 10:30 A. M.

Appellant assigns error in connection with Instruction No. 2 given in behalf of respondent, which reads as follows:

"The Court further instructs you that if you find from the evidence that, in the performance of his duties, plaintiff was directed and required by defendant's foreman to assist in the moving of certain boards by means of a motor car and derrick car and that, in compliance with such directions, plaintiff was on said derrick car; that suspended from the crane of said car was the board mentioned in evidence; that the same was unsecured and suspended over the side of said derrick car; that the defendant failed to counterbalance or weigh down the derrick car so as to prevent its tipping or unbalancing and that the defendant, through the foreman, thereafter caused the said derrick car to be moved by motor car, and in coming to a stop at and on the bridge mentioned in evidence, said car was caused to jerk and jolt and to become unbalanced and to be derailed, and that by reason of all of the aforesaid, the defendant did thereby fail to exercise ordinary care to furnish plaintiff with a reasonably safe place in which to work and was negligent, and that the said derrick car tipped over and became derailed and plaintiff was thrown therefrom and injured as a direct result of such negligence of the defendant, in whole or in part, then the Court instructs you that the plaintiff is entitled to recover and your verdict should be in favor of the plaintiff, Turner Hilton, and against the defendant."

 Appellant's first complaint is that the instruction should have required the jury to find a specific cause, such as the sudden application of the brakes by the foreman, for the jerking and jolting

of the car which caused it to become derailed. The cases cited by appellant do not sustain this contention. For example, Brainard v. Missouri Pac. R. Co., 319 Mo. 890, 5 S. W. (2d) 15, holds only that where a petition charges as negligence the conjunction of a hump in the track and excessive speed of a car, and the evidence was presented upon this theory, it was error to instruct the jury that defendant might be held liable upon a finding of excessive speed alone. In the case at bar, the petition alleged various acts of negligence, one of which was, in substance, that the appellant moved the derrick car by means of the motor car "and did jerk, jar and jolt the said car so that the same would be likely to become unbalanced and to become derailed." The instruction required the jury to find, among other things, that appellant, through his foreman, caused the derrick car to jerk and jolt and to become unbalanced and derailed. Concededly, the foreman was operating the motor car and controlled the movement of the derrick car. The instruction required the jury to find the substantive and essential facts which combined and concurred to cause the derrick car to become unbalanced and derailed. If the jury believed from the evidence that the derrick car became derailed from some cause not hypothesized in the instruction, it could not have found for respondent. It is not necessary that an instruction require the jury to find evidentiary facts. It is only necessary for an instruction to require the jury to find the substantive facts which are essential to recovery. Henderson v. Dolas, (Mo. Sup.) 217 S. W. (2d) 554, 557; Vrooman v. Hill, 347 Mo. 341, 147 S. W. (2d) 602; Acme Harvesting Machinery Company v. Gasperson, 168 Mo. App. 558, 153 S. W. 1069.

Appellant's next complaint is that the instruction improperly imposed upon him the duty of furnishing respondent a reasonably safe place in which to work; that such a duty does not exist in connection with construction work; and that a recovery could not be based upon a failure to discharge this duty if the accident was caused by the rail which was necessarily raised in the course of repairing the bridge. Pritchard v. Thompson, 348 Mo. 832, 156 S. W. (2d) 652 and Stone v. Missouri Pac. R. Co., (Mo. Sup.) 293 S. W. 367, undoubtedly hold that, under the facts presented, the employer was under no duty to exercise ordinary care to furnish an employee a reasonably safe place in which to work, but they have no application here. In Kelso v. W. A. Ross Construction Company, 337 Mo. 202, 85 S. W. (2d) 527, cited by appellant, where an employee on a construction project, who was directing the unloading of trucks, was injured by the backing of a truck, this Court stated: "In construction work where conditions are constantly changing the duty of providing a safe place of work cannot be imposed to the same extent as in the case of work done in a more permanent location because,

189

under these conditions, it is impossible to keep the place of work, the actual physical location in which the work is done, as safe as a place in a completed structure." But the Court also held that under such circumstances, the duty of providing a safe method of carrying on the work increases and "* * * the employer's duty is not merely safety of the place of work of his employee, but also his *safety in his place of work;* in short, a safe environment as well as a safe place." The instruction is so phrased that the jury could not have found that appellant failed to furnish respondent a reasonably safe place in which to work without finding that such failure resulted from the method of work employed by the foreman and the manner in which he used and operated the cars involved.

The instruction here did not permit the jury to find for respondent because the east rail across the bridge had been raised. It is phrased in the conjunctive and required the jury to find the concurrence of all of the facts stated. The jury could not find that appellant had failed to exercise ordinary care to furnish respondent with a reasonably safe place in which to work without finding the existence of all the other facts set out in the instruction. Under the facts presented in the instruction, a finding that appellant failed to exercise ordinary care to furnish a reasonably safe place in which to work was not essential to a recovery by respondent. Respondent assumed an unnecessary burden of which appellant may not complain. Henderson v. Dolas, supra; Lindquist v. Kansas City Public Service Company, 350 Mo. 905, 169 S. W. (2d) 366, 368 and cases there cited.

Finally, in his reply brief, appellant suggests that the instruction does not require a finding that the negligence of appellant caused the derailment and that such negligence was the proximate cause of the accident. The instruction sets out clearly the facts which the jury was required to find, including the substantive facts relating to the derailment, and requires a finding of negligence and "that the said derrick car tipped over and became derailed and plaintiff was thrown therefrom and injured as a direct result of such negligence of the defendant." There is no merit in this contention. We hold that the giving of this instruction did not constitute reversible error.

Appellant assigns error in the giving of Instruction No. 13 on damages because (1) it does not direct the jury to diminish the damages if respondent is guilty of contributory negligence and (2) it allowed the jury to assess double damages. Instruction No. 11, given the jury at appellant's request, instructed the jury that respondent's contributory negligence would diminish the damages otherwise to be awarded him in proportion to the negligence attributable to him. Appellant argues that Instruction No. 13 constituted mis-

direction which was not cured by Instruction No. 11. Appellant concedes that in McIntyre v. St. Louis & S. F. R. Co., 286 Mo. 234, 227 S. W. 1047 and Hampton v. Wabash R. Co., 356 Mo. 999, 204 S. W. (2d)'708, 709, where the same contention was made, this Court held that the omission in the damage instruction of a direction concerning the mitigating effect of contributory negligence was non-direction, and since another instruction properly instructed on the effect of contributory negligence on the award of damages in a Federal Employers' Liability Act case, the instructions, taken as a whole, properly declared the law. Appellant argues, however, that the decision in McIntyre v. St. Louis & S. F. R. Co., supra, is no longer good law because the Federal Employers' Liability Act was amended'on August 11, 1939, (45 U. S. C. A. Sec. 54) so as to remove the doctrine of assumption of risk as a defense in bar. It is not clear why this amendment of the Federal Act is supposed to have this effect. Certainly, at the time the McIntyre case was decided, contributory negligence could only be considered in diminution of damages, (45 U. S. C. A. Sec. 53) and this was perfectly obvious to the Court at that time. The same contention was presented to this Court in Counts v. Thompson, 359 Mo. 484, 222 S. W. (2d) 487, 493. We there held that the McIntyre case should be followed, particularly since the plaintiff's instruction authorizing full damages was qualified by the requirement "if you find the issues in favor of the plaintiff under the evidence and other instructions given." In this case the Court gave Instruction No. 10, at appellant's request, which told the jury "that the instructions are to be considered together, as constituting one whole set of instructions and your verdict must not be based on only one or more of the instructions, without consideration by you of all of the instructions." It is well settled that instructions must be considered together and not in isolation, and if, taken as a whole, they correctly declare the law, there is no reversible error. This rule of law was emphasized to the jury by Instruction No. 10 and McIntyre v. St. Louis & S. F. R. Co., ▮ supra, and Hampton v. Wabash R. Co., supra, are controlling and should be followed.

▮ The contention that Instruction No. 13 permits the assessment of double damages for permanent injuries is also ruled against appellant. A similar, if not identical, instruction was before this Court in Meierotto v. Thompson, 356 Mo. 32, 201 S. W. (2d) 161. We held then, and now hold again, that such an instruction does not constitute reversible error where the evidence justifies the finding that plaintiff sustained a permanent injury.

▮ Appellant assigns error in the giving of Instruction No. 1 on the ground that it is an abstract statement of the law which could only confuse the jury. The instruction tells the jury that the case is

governed by the Federal Employers' Liability Act and then states that under the provisions of this Act a "railroad while engaged in commerce between any of the several states shall be liable in damages to any person suffering injuries while he is employed by such carrier in such commerce resulting, in whole or in part, from the negligence of any of the officers, agents, or employees of such carrier." There is no complaint that this instruction does not correctly state the law. It does not direct a verdict. It was followed immediately by Instruction No. 2 submitting respondent's theory of recovery in which all of the essential facts were set out and the law was correctly applied to such facts. Under the circumstances, we do not believe the jury could have been confused or misled by it. We hold that the giving of this instruction was not reversible error. McGrew v. Missouri Pac. Ry. Co., 109 Mo. 582, 19 S. W. 53; Coats v. Old, 167 S. W. (2d) 652, 654.

█ Appellant complains of error in the refusal of an instruction directing the jury to include nothing in the verdict for Federal, State, or City taxes since such taxes could not be assessed upon the amount of any verdict awarded respondent. Appellant cites no authority to support the giving of such instruction. The instruction was properly refused. The jury was properly instructed on the factors to be considered in fixing the amount of respondent's damages and it would not have been proper to inject into the case an extraneous issue regarding the tax exempt status of the damages which might be awarded.

▪ █ Appellant assigns error in the refusal of the trial court to permit cross-examination of respondent and his wife on the subject of respondent's failure to file a claim for a disability pension under the provisions of the Railroad Retirement Act [45 U. S. C. A. Sec. 228b (a) 4.] Appellant's contention is this: If respondent is totally and permanently disabled, as he claims, he is entitled to receive a pension under the provisions of this act. He did not apply for a pension and his failure to do so is an admission against interest tending to prove that he is not disabled to the extent he claims. Of course, respondent's eligibility for a pension under the Federal Act was a collateral matter not germane to the action on trial. His right to a pension could not have been determined by the trial court without a careful examination of the Railroad Retirement Act and the decisions construing and applying it. We do not believe that the trial court could properly be charged with this duty in order to determine the competency of evidence designed to show that respondent did not apply for such pension when he was eligible for it.

The authorities cited by appellant do not sustain his contention that respondent's failure to apply for a pension constitutes an admission against his interest. On the contrary, in Reiling v. Russell,

345 Mo. 517, 134 S. W. (2d) 33, which appellant cites, this Court held that it was error to admit evidence of plaintiff's failure to file a claim for Workmen's Compensation after his employer had discontinued the payment of benefits under the Workmen's Compensation Act. This was an action to recover damages against a third person for injuries sustained in an automobile accident. In holding that the evidence that no claim was filed did not constitute an admission that his disability had ceased, this Court was fully cognizant of the employer's right of subrogation to the extent of any benefits paid under the Workmen's Compensation Act. It is well settled that the scope and extent of cross-examination of a witness in a civil case is discretionary with the trial court and this is particularly so with regard to collateral matters. Hungate v. Hudson, 353 Mo. 944, 185 S. W. (2d) 646; Orr v. Shell Oil Co., 352 Mo. 288, 177 S. W. (2d) 608. We hold that the trial court did not abuse his discretion in excluding cross-examination of respondent with respect to his failure to apply for a pension. The fact, as appellant argues, that he would be entitled to off-set against respondent any contributions made by him under the Railroad Retirement Act, if respondent in fact received a pension, is of no significance since respondent was not paid a pension under this act.

▪ Counsel for appellant frankly admits that he was most persistent in his attempts to elicit from respondent that he was entitled to a pension, that he had not applied for one, and the reasons for his failure to do so. A number of references to these matters were made by counsel for appellant in the hearing of the jury. As a matter of fact, at one point in the trial, counsel elicited from respondent the fact that he had not applied for a pension and that he knew there was a pension plan in existence. Under these circumstances there was no error in the giving of Instruction No. 4 to the effect that any award of damages to respondent could not be reduced "on account of any pension plaintiff may be entitled to receive." We rule this assignment of error against appellant.

 Appellant's next assignment of error is that the Court improperly sustained objections to appellant's offers of proof in connection with the cross-examination of respondent and another witness (Morgan) wherein appellant sought to show that payments which were made to them were voluntary and without regard to appellant's liability to either of them. Appellant argues that such evidence was competent to refute an inference of liability which might otherwise arise from the fact that certain payments had been made to the respondent and to Morgan, both of whom had claims against appellant arising out of the accident of April 24, 1946. Counsel for appellant elicited on cross-examination the fact that appellant had made certain payments to respondent and to Morgan. No reference

had been made to this matter in the direct examination of either respondent or Morgan. Neither of them volunteered the information. Appellant, for reasons best known to him, inquired on cross-examination as to payments. Under these circumstances and in view of the discretion of the trial court with respect to the scope of cross-examination, we hold that the trial court did not abuse its discretion in refusing to permit appellant to pursue the subject further by attempting to show a custom to make such payments voluntarily, without regard to liability, and sustaining objections to appellant's offers of proof.

Appellant next contends that certain portions of the argument of respondent's counsel were improper appeals to the passions and prejudices of the jury and constitute reversible error. The first objection concerns a reference to the "Missouri Pacific empire" which occurred in the following connection: "I ask for no sympathy—I want none. I am not entitled to any for him, any more than they are entitled to any for the Missouri Pacific empire. If he lives fifteen years it is reasonably certain he will . . . Mr. Cole: I object to the statement 'empire' Your Honor, and ask that he withdraw it. The Court: You may withdraw that. Mr. Hullverson: I will withdraw it."

The objection of appellant's counsel to this statement was sustained and the remark was withdrawn. Counsel asked for no other relief from the trial court. In view of these circumstances we do not believe that just complaint can be made by appellant or that the matter is sufficiently preserved for review. Dodd v. Missouri-Kansas-Texas R. Co., 353 Mo. 799, 184 S. W. (2d) 454, 458; Bulkley v. Thompson, 211 S. W. (2d) 83, 91.

Next, appellant complains of the following portions of the argument of respondent's counsel: "Gentlemen, let's clear up one point right now. He criticizes this man for bringing his action before a St. Louis jury. Is there something wrong with a St. Louis jury? Are you stupid, are you greedy or are you dishonest? Can't you see whether a person tells the truth? Is there something wrong with you? Under the law, gentlemen, and my friend cannot contradict it, a man has a right to bring his suit wherever he wants to bring it, and it was an easy place for them. These records and things were in the city of St. Louis. The Missouri Pacific Hospital Association is right here. They shouldn't crab about it. When I was a boy I lived in a little country town, DeSoto, Missouri. My Daddy was switchman for the Missouri Pacific Railroad Company, and I know the awe and wonderment which everyone in. that town used to feel about the great Missouri Pacific Railroad. They were the town, just like the St. Joe Lead is the town in those lead mining districts. They were majesty, itself. No one dared to disrupt any of their

194

plans. Mr. Cole: I object to that argument as an appeal to prejudice. I have not indicated to this jury you didn't have a right to bring the suit here. I have not contested that. I didn't file a motion at the time you brought it here. It is here. I say you have a right—you could bring it in Colorado or Texas. Mr. Hullverson: We have a right to explain why we brought it here. How do you know what conditions existed at Aurora or Mt. Vernon. Mr. Cole: I object to that as an appeal to prejudice, implying the people down there are crooked or dishonest. The Court: Objection overruled. Mr. Hullverson: We have a right to answer. There ought to be a good reason. Maybe we couldn't get justice there. Mr. Cole: I object to that, Your Honor, as an appeal to prejudice. The Court: Objection overruled. Mr. Hullverson: I have a right to argue. Mr. Cole: Same objection. Mr. Hullverson: His was an appeal to prejudice. He wanted to make you think because he lived there the people would flock in and say he was a faker and thief because he has sued the mighty Missouri Pacific. Well, if he was a thief and faker and false claimant, the Missouri Pacific could operate their train right down here with all the witnesses that are there just as well as their employees. If he was a faker they would have had them all right here. It would have been very easy to show you he was a faker and a crook."

We have no doubt that this portion of respondent's argument was in response to the following argument of appellant's counsel: "You know, gentlemen of the jury, that the only reason in the world that this case is here before you twelve men is because Mr. Hilton and Mr. Myres and Mr. Sweeney decided that Mr. Hilton could get more from some jury who never saw him than he could get before a jury of people who had seen him for years. Even when he lived at Crane, Missouri, until four years ago, he was only sixteen miles from that court house at Mt. Vernon. Now he lives seven or eight miles. He has lived in that same county for the last ten years. It is a small county. They know all about you. They know whether he was sick before. They know Dr. Kerr, the great doctor traveling over the country. He said he only did it six times in Mr. Myres' cases. They know whether he is a good doctor or not, and more important is the fact that those neighbors and friends and relatives would be on that jury down there. They know Mr. Hilton's condition before this accident ever occurred. That is just good common sense. He is here because he feels that a jury of strangers would be better to him than a jury of people who had known him all his life, known him and his family all their lives. In other words, who is trying to put anything over in this law suit? Why is this case here after it laid there for a year or more down there at Mt. Vernon, Missouri, the county seat? One of the doctors they consulted who they didn't

bring was Dr. Glover, across the street from that court house. Why didn't they try it down there a long time ago without bothering a St. Louis jury about a Lawrence County matter? Why wasn't it tried down there?''

Finally, appellant complains of the following reference to doctors who testified for appellant: ''They bring these gentlemen—yes, they are the Missouri Pacific Employees Hospital and they always testify for the Missouri Pacific, just like they did in this case.'' No objection was made to this argument at the time and appellant is not now in a position to urge error in this respect. Miller v. Mutual Life Insurance Co. of New York, (Mo. App.) 79 S. W. (2d) 750, 758; Dodd v. Missouri-Kansas-Texas R. Co., supra.

While we do not approve of all of the argument of respondent's counsel, it is quite apparent from the entire record that the case was tried hard and argued vigorously on both sides. Much of respondent's argument to which objection is made was obviously in answer to the argument of appellant and was in the nature of retaliation. After careful consideration of all of the arguments made, we do not believe that the argument of respondent's counsel was of such a character as to justify a retrial of the case. Griffith v. Gardner, 358 Mo. 859, 217 S. W. (2d) 519, 530, 531 and cases there cited; Miller v. Mutual Life Insurance Co. of New York, supra. The trial court is allowed wide discretion in determining the propriety of arguments. Griffith v. Gardner, supra. We hold that the trial court did not abuse its discretion in holding that the argument of respondent's counsel was not prejudicial to appellant.

 On appellant's contention that the verdict is excessive, we cannot weigh the evidence concerning the nature and extent of respondent's injuries and the resulting disability and losses sustained by him. While the evidence is conflicting on these issues, we must consider only the evidence and the inferences most favorable to respondent.

Respondent was fifty-four years old at the time of the trial. Prior to the accident he had been in good health with the exception of an attack of malaria in 1929 which disabled him for ten months, a slight stroke in 1940 which paralyzed his left side for about forty-five minutes, and an injury to his shoulder in 1939 for which he was hospitalized in 1940. He had recovered from these conditions but stated he may have limped a little and had slight backaches occasionally.

Immediately after the accident, he was taken to the Baptist Hospital at Springfield where he remained seventeen days. He was then taken to the Missouri Pacific Hospital in St. Louis where he remained until June 12, 1946. He returned to this hospital periodically until February, 1947. He was in a cast about forty-eight days.

After he returned home, he was in bed most of the time for three or four months. He was on crutches for five or six months and since then has used a cane to relieve the pressure on his back and leg.

He was in pain while in the hospital and has constant pain in his back and right leg down to the ankle. He cannot bend over. He takes hot baths two or three nights a week to relieve his pain and to get sleep. He is nervous and does not sleep much, and his wife rubs him with alcohol and ointments. He has tried to work but cannot and has earned no money since the accident. Prior to the accident his average monthly earnings were about $226.00. Appellant argues that, on respondent's testimony that he earned $1.05 an hour, his monthly earnings would be considerably less than $226.00 a month, but there is no evidence showing the number of hours in the standard work week.

Dr. Frank T. Kerr, who admitted he was not an X-ray expert but who felt he was able to interpret X-ray pictures, testified: X-rays showed that respondent had three comminuted fractures of the superior-inferior rami of the right pubic bone with moderate separation of the bones. He had a compression of the intervertebral discs of the interspaces of the fourth and fifth lumbar and the fifth and first sacral vertebrae. There was a compression fracture of the first lumbar vertebra. Between the fourth and fifth lumbar vertebrae and the fifth lumbar and the first sacral vertebra there was a narrowing in the normal spacing and a haziness in the X-ray indicated damage to the disc with an extravasation or oozing of blood into the tissues. A fall and blow such as respondent sustained would cause this type of injury. The narrowing of the space was due to destruction of the disc. X-rays also showed arthritis of the spine with spur formations. This was not caused by the injury. Injury to the back breaks down the adhesions between the spurs and the musculature and ligamentous portion of the body, causing an inflammatory reaction around the area. This would cause pain and a spasticity of the muscles. "I would say a 52 year old man with this much arthritis, it would certainly make it very difficult for him; I don't see how he could do any manual labor, as he has been describing here." Arthritis is never cured but it often becomes quiescent. Manual labor would cause considerable pain. "Q. In your opinion can this man do any labor work in the future? A. I don't believe so—not in my opinion." As to the permanency of respondent's injuries he stated: "He has, of course, this primary fracture of the pelvis; that is permanent; he has good union in this pelvis, the films all show good union of the pelvis; it is a little off, but it is a good union; he will always have a limp due to this slight mal-alignment; that is permanent, and would, of course, affect him to a certain degree in his earning capacity and his ability to move about. The big injury, as I see it, are these areas of disc disintegration, intervertebral disc disintegration between the vertebrae; that is a permanent injury that has no cure. We will have to qualify that and say the orthopedic surgeons have been

trying to cure that condition for a number of years, and I am sure everyone of you have heard they go down in the leg, take out a piece of bone, put it in the back and make it stiff, but they are finding that causes more pain than they had without it, and they are backing off of that operation a certain amount, so you are damned if you do and damned if you don't; by that I mean it is permanent, and he might with such stabilization of his vertebrae be able to get some measure of relief from pain, due to the fact it was held still, but he would still be incapacitated for physical labor, because he couldn't bend his back with a stabilizing operation.''

On cross-examination he stated that the X-ray report at St. Vincent's Hospital in Monett did not mention an injury to any intervertebral disc. He also stated: ''Q. Do you mean to tell the jury that the destruction you see in that intervertebral space could have been occasioned by the accident? A. That is my opinion.''

Dr Maurice B. Roche, an orthopedic surgeon, gave the following testimony: Upon physical examination of respondent, his posture was poor; he walked with a limp on the left side; he stood with his right knee flexed; there was local tenderness over the lumbo-sacral joint; and his lower back was rigid. On bending forward he complained of pain in his right thigh, and there was limitation of motion in bending backward. On straight leg raising, he was unable to lift his right leg and could lift the left one only slightly. These conditions indicated weakness of the muscles of the lower back. The right ankle jerk was diminished indicating some disturbance in enervation of the muscle or nerve supply. X-ray examination showed a fracture of both the ascending and descending rami of the pubis on the right side of the pelvis. There was a marked narrowing of the intervertebral disc space between lumbar five and sacral one. There was considerable osteoarthritic spurring of the entire lumbar spine and some shortening of the vertical dimension of the body of the first lumbar vertebra. This was the result of the application of force. It was a compression type fracture of the lumbar vertebra. The arthritis was not caused by the injury. Injury to the spine may aggravate the process and cause pain. The narrowing of the intervertebral space between the fourth and fifth lumbar and the fifth lumbar and the first sacral indicates some change in the intervertebral discs which could result from a fall such as respondent sustained. Such a condition could very well cause pain. There is limitation of motion in the back because of ▮ the injury. In the lumbo-sacral level there is a subluxation or displacement and overriding of the posterior joints which restricts motion and may cause pain. He stated further: ''Q. Would your opinion be that would cause him pain, working with that kind of a back? A. I should think so, depending on the type of work he would do. Q. I mean hard manual labor? A. I think any type of physical exertion, looking at his X-ray plates, it is reasonable to suppose he would have

pain.'' He stated there would be no improvement in the bone changes and the cartilaginous disc will not reconstruct. He made no diagnosis of ruptured intervertebral disc but it is highly possible that respondent has a nerve root irritation, because he has diminished ankle jerk on the right side.

While the appellant's medical evidence tended to show that respondent had not sustained a compression fracture of any vertebrae, that there was, no injury to any of the intervertebral discs and that he had made a good recovery which would permit him to resume work, the weight of the evidence and the credibility of the witnesses was for the jury. Respondent's evidence was sufficient to sustain a finding that he was permanently incapacitated for manual labor.

There is no precise or objective standard to determine the monetary value of the damages sustained by respondent. Each case must be considered upon its own peculiar facts, giving some consideration to the decline in the purchasing power of money and having regard to a reasonable uniformity of awards. Van Campen v. St. Louis-San Francisco Ry. Co., 358 Mo. 655, 216 S. W. (2d) 443, 449; Joice v. Missouri-Kansas-Texas R. Co., 354 Mo. 439, 189 S. W. (2d) 568, 577; 161 A. L. R. 383; Young v. Terminal R. R. Ass'n. of St. Louis, (Mo. Sup.) 192 S. W. (2d) 402, 409. Considering only the evidence most favorable to respondent, the verdict is excessive in comparison with other verdicts which have been sustained on appeal in cases involving injuries which are somewhat similar. We think the verdict is excessive by $7,000.00. Van Campen v. St. Louis-San Francisco Ry. Co., supra; Tatum v. Gulf, M. & O. R. Co., 359 Mo. 709, 223 S. W. (2d) 418; Zichler v. St. Louis Public Service Co., 332 Mo. 902, 59 S. W. (2d) 654; Carpenter v. Wabash R. Co., 335 Mo. 130, 71 S. W. (2d) 1071; Holtz v. Daniel Hamm Drayage Co., (Mo. Sup.) 209 S. W. (2d) 883; Williamson v. Wabash R. Co., 355 Mo. 248, 196 S. W. (2d) 129.

If respondent will, within ten days from the date of filing this opinion, enter here a remittitur of $7,000.00, the judgment for $30,000.00, as of the date of the original judgment will be affirmed; otherwise, the judgment will be reversed and the cause remanded because of an excessive verdict. *Van Osdol* and *Lozier, CC.,* concur.

PER CURIAM:—The foregoing opinion by ASCHEMEYER, C., is adopted as the opinion of the court. All the judges concur.